Points decided.

[No. 3,029.]

# CHARLES B. DAVENPORT *v.* J. W. TURPIN, M. WILCOX, A. WILCOX, A. S. HAWLEY, AND SAMUEL POORMAN.

LEGAL TITLE NOT DIVESTED BY FORECLOSURE SALE.—A proceeding in foreclosure instituted against a mortgagor alone, cannot overreach or affect the title of a vendee of the mortgagor, vesting intermediate the delivery of the mortgage and the commencement of the action to foreclose it.

ACTION DISMISSED WITHOUT TRIAL.—An action merely commenced and then dismissed without trial, determines nothing and concludes no one.

ABANDONMENT OF LAND.—A party holding the legal title to land as the vendee of a mortgagor cannot divest himself of the title by abandonment, nor by any mere parol disclaimer.

ESTOPPEL IN PAIS.—Where H., being the owner of the undivided half of a parcel of land, and believing that he was the owner of the other half, entered thereon, and M., who held the legal title to the other half, but believed the title was in H., withdrew from the possession; and it appeared that M. did not attempt to practice any deception upon H. in surrendering the possession, but H. was as well informed of the state of the title as M., and did not rely upon any admission or conduct of M.: *Held*, that the withdrawal of M. did not estop him from afterwards asserting his title at any time within the period fixed by the Statute of Limitations.

MORTGAGE MERGED IN DECREE.—A mortgage is merged in the decree of foreclosure, and a party who enters under the decree cannot be regarded as a mortgagee in possession.

MORTGAGEE IN POSSESSION BY AGREEMENT.—If a party holding a Sheriff's deed to land, executed under a foreclosure sale, enters upon it as mortgagee in possession, by agreement with the mortgagor, neither such agreement, nor the entry in pursuance of it, can affect the title of a vendee of the mortgagor acquired intermediate the delivery of the mortgage and the commencement of the action to foreclose it.

DEED AS MORTGAGE.—Under a plea of the general issue in ejectment, a deed absolute in form cannot be attacked on the ground that it was in fact intended to be a mortgage.

APPEAL from the District Court of the Sixth Judicial District, Sacramento County.

This was an action of ejectment to recover the undivided half of lot number three in the block bounded by I and J, and Front and Second streets, in the City of Sacramento.

In August, 1849, John S. Fowler, the owner of the lot, conveyed an undivided half of it to Samuel Brannan. In September following Brannan leased to Fowler his half of the lot, together with the City Hotel thereon, for one year, at an annual rental of twenty-five thousand dollars, and at the same time executed to Brannan a mortgage upon his half of the property to secure the payment of the rent, which mortgage was duly recorded. On the 10th of June, 1850, Brannan sold and conveyed his interest in the lot to Talbot H. Green, and on the sixth of August following sold and transferred the lease and mortgage to Green. During the term of the lease— from October 1st, 1849, to October 1st, 1850—Fowler carried on the business of a hotel in the building situated on the lot, and W. R. McCracken was his clerk. Three days after the lease had expired, the rent being in part unpaid, Green commenced an action to foreclose the mortgage. At that date McCracken had in his possession an unrecorded deed from Fowler of his interest in the premises, dated September 10th, 1850, taken as security for the payment of his services as clerk. He was not made a party defendant in the foreclosure suit. He had the deed recorded December 5th, 1850. Green obtained a judgment in the foreclosure suit for nine thousand six hundred and eighty-seven dollars, and at the sale thereunder he was the purchaser, bidding four thousand dollars, and receiving from the Sheriff a deed for Fowler's interest in the property. In April, 1851, Green deeded the lot to W. D. M. Howard; and in the ensuing month Howard commenced an action against Fowler and McCracken to recover possession of the premises. The defendants appeared and denied the title of the plaintiff in that action, but they afterwards surrendered the possession to Howard, and on motion of the plaintiff the action was dismissed. Howard soon afterwards made valuable improvements upon the property, and remained in possession until he died in 1856. The defendants are tenants of Howard's heirs. In

1867 McCracken executed a deed conveying all his interest in the lot to the plaintiff Davenport, having taken no previous steps to assist his title.'

This action was commenced in October, 1867. At the trial the defendants introduced evidence tending to prove the existence of a copartnership between Howard and Green in 1849–50, and that the mortgage assigned to Green by name was in fact an assignment to the firm.

The plaintiff had judgment and the defendants appealed.

This case was before the Supreme Court at the January Term, 1871, on appeal from a judgment in favor of the defendants. (See 41 Cal. 101.)

The other facts are stated in the opinion.

*A. P. Catlin,* for Appellants.

The delivery of possession was as effectual in equity as if in the suit then pending judgment had gone against McCracken. In that suit Howard might have recovered by proving just what McCracken stated the fact to be, connected with his deed from Fowler, namely: that his deed was only a mortgage to secure payment for his services as Fowler's clerk. Such a recovery would have been a good record estoppel against McCracken. Why, then, do not his acts, voluntarily executing the same thing, with full knowledge of the condition of his own title, constitute an estoppel *in pais?* This transaction has all the elements of an estoppel *in pais.* If McCracken had not abandoned his claim, and delivered over the property, Howard could have had the sale under the foreclosure set aside, the decree opened, McCracken made a party, and his interest sold. Howard was led to waive these steps, which would have extinguished McCracken's interest. Assuming the latter to have held the legal title, would it not be a fraud on his part to lie by until it was too late for Howard to avail himself of his remedy, and then assert his title? The act of McCracken in aban-

doning the only claim which he said he had on the property, to wit: his claim for his services, in delivering possession to Howard, and in acquiescing therein until Howard's remedy was barred, was a continuing act by which the latter was placed in a worse position than he otherwise would have been. (*Bowman* v. *Cudworth*, 31 Cal. 148.) McCracken also put himself in a better position by acting as he did, because he thereby obtained a much longer lease of time in which he might redeem. Howard became a mortgagee in possession by consent of the mortgagor, and was entitled to retain such possession until satisfaction of the mortgage debt, or at least until a demand for an accounting and a refusal to account. A mortgagee in possession cannot be evicted by the mortgagor or any one claiming under him until the debt is paid. (*Waring* v. *Smythe*, 2 Barb. Ch. 135; *Friesche* v. *Kramer*, 16 Ohio, 125; *Walson* v. *Spence*, 20 Wend. 260; *Smith* v. *Smith*, 15 N. H. 55; *Dutton* v. *Warschauer*, 21 Cal. 609; *Skinner* v. *Buck*, 29 Cal. 253; 2 Halst. 178.)

*W. S. Mesick*, and *Beatty & Denson*, for Respondents.

There was no turpitude in this case, and therefore it does not come within the definition of estoppel *in pais*. (*Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 279; *Davis* v. *Davis*, 26 Cal. 40.)

The mortgage debt was merged in the judgment and sale. The relation of mortgagor and mortgagee no longer existed after the sale. Howard, in fact, had nothing to do with the mortgage. (*Naglee* v. *Macy*, 9 Cal. 426; *Johnson* v. *Sherman*, 15 Cal. 293; *Robinson* v. *Russell*, 24 Cal. 472; *Smith* v. *Shaw*, 16 Cal. 88; *Bolton* v. *Landers*, 27 Cal. 104.)

By the Court, WALLACE, C. J.:

Both parties attempt to deraign title to the undivided half of the premises in contest from John S. Fowler—the

plaintiff, through the conveyance of Fowler, made to Mc-Cracken in September, 1850, recorded in December following, and the defendants, through the foreclosure of the mortgage to Brannan, made by Fowler, and recorded in September, 1849. The action to foreclose the mortgage was brought in October, 1850, after the delivery of the deed to McCracken. It was brought against Fowler alone, and the deed to McCracken was already of record before the decree of foreclosure was rendered, and, of course, before the Sheriff's sale thereunder was made. That the legal title thus vested in McCracken was not divested by the foreclosure sale and Sheriff's deed is clear and unquestionable, for it is settled in this State that a proceeding in foreclosure, instituted against a mortgagor alone, cannot overreach or affect the title of a vendee of the mortgagor vesting intermediate the delivery of the mortgage and the commencement of the action to foreclose it. (*Carpentier* v. *Williamson*, 25 Cal. 161, and cases there cited.)

But the defense mostly relied upon is of an equitable character. It is alleged that McCracken, the grantee of Fowler, surrendered possession to the holder of the Sheriff's deed in foreclosure, and so abandoned his claim, and that ever since then, during a period of many years, the possession has been held under the foreclosure title without challenge or objection. The principal facts upon this point are that the holder of the Sheriff's deed (being at the time the undisputed owner of the other undivided half of the premises) brought an action against Fowler and McCracken as being in possession, in which he sought to recover the entire premises. In that action both defendants appeared and filed an answer, in which they denied the title of the plaintiff there. No trial was had, nor judgment rendered upon the merits; but the action was dismissed, and the defendants

quit the possession, and permitted the plaintiff to enter upon and occupy the premises. It must be conceded that an action merely commenced and then dismissed without trial determined nothing, and concluded no one. It is clear, too, that McCracken holding, as he did, the legal title, by force of the deed he had received from Fowler, could not divest himself of that title by abandonment, nor by any mere parol disclaimer. To hold that he could would be to contravene the Statute of Frauds, Sec. 6. (16 Johns. R. 119.) Nor do the facts constitute an estoppel *in pais* against McCracken, or the plaintiff deriving title from him. There is no doubt that the owner of the legal title to lands may, under certain circumstances, become estopped from asserting that title. The principles upon which the estoppel proceeds were declared in *Biddle Boggs* v. *Merced Mg. Co.*, 14 Cal. 279, and it is obvious that the case here does not fall within the rules there mentioned, for certainly McCracken did not attempt to practice any deception upon Howard in surrendering the possession, and it is equally clear that Howard was as well informed of the state of the title to the premises as McCracken was, and in taking possession did not rely upon any admission or conduct of McCracken. Howard, as being the undisputed owner of an undivided half of the premises, had a right to enter thereon. If in so entering he believed that he owned the other half also, and if McCracken, being of the same opinion, upon the facts of the case known equally well to Howard as to himself, withdrew from the possession, this would not estop the latter, nor his grantee, from afterwards asserting his title at any time within the period fixed by the Statute of Limitations. It is highly probable that both Howard and McCracken had been advised that the result of the foreclosure proceedings, followed by the Sheriff's deed to Green, the grantor of Howard, was that the legal title to the half included in the mortgage had become vested in Howard, and it is also proba-

ble that the surrender was made upon the idea that Mc-Cracken's title had been defeated by the delivery of the Sheriff's deed. It is known at any rate that such was the prevailing opinion of the profession of that early day upon the point. But however this may be, it is sufficient to say that the circumstances come clearly short of creating an equitable estoppel in favor of Howard.

In the motion made by the defendants for a new trial, reliance was placed upon certain newly discovered evidence, which we shall, however, assume to have been in the case below at the hearing there. The effect of this evidence was to show that Howard was part owner of the mortgage debt when he took possession of the premises, and being thus a mortgagee in possession, he cannot, it is said, be disturbed until his debt be paid. But it is sufficient to say that when Howard took possession he did not do so as mortgagee; the defense, as pleaded here, does not so allege, and it is evident that he had no intention of entering in that character. He did not agree to hold the premises in that capacity. Besides, there was no mortgage in existence at the time Howard entered; it had been merged in the decree as rendered in the suit of *Green* v. *Fowler*, and there was, of course, no mortgagor who could assent to his entry as mortgagee.

Again, if there had been a mortgage then existing, and if Howard had entered as mortgagee, by an agreement express or implied with Fowler as being mortgagor, neither such an agreement, nor the entry made in pursuance of it, could affect the title of McCracken already vested by the delivery of his deed. If it be said that Howard entered as mortgagee by consent of McCracken, the answer is, that the latter was not indebted to Howard, nor was he ever a mortgagor of these premises, and McCracken's supposed consent that Howard should enter as mortgagee, would simply be an attempt upon his part to mortgage his own lands by *parol* to secure a debt claimed by the mortgagee from a third person. Had the

defendants therefore established the existence of the copartnership between Howard and Green in 1849–50, and so proven that the mortgage assigned to Green by name was thus really assigned to Howard and Green, it would not have aided them in the defense.

It is lastly claimed that the judgment cannot be supported, because, as is said, it is clearly shown that the instrument from Fowler to McCracken, purporting to be a deed of conveyance, was, in fact, a conveyance by way of mortgage merely—and this point is much discussed by counsel on each side. I am of opinion, however, that it does not arise in the case. Under the general issue pleaded it was not competent to the defendants to attack the McCracken deed on the alleged ground that it was a mortgage, and for the purpose of defeating its otherwise legal effect as being an absolute deed of conveyance, which it purports upon its face to be. This point must be considered as settled here by the case of *Hughes* v. *Davis*, 40 Cal. 117. If the defendants had therefore had an interest in making it appear that the McCracken deed was a mortgage, they must have resorted to the equity side of the Court for that purpose; and applying there they must, of course, have averred it to be such in the pleading. We have searched in vain to find any such allegation in the defense here pleaded by these defendants. There is no attempt made in that direction; on the contrary, the distinct averment of the defendants is, that the McCracken deed was *a conveyance of the title* of Fowler, and was intended by the parties *as such;* a conveyance by which, as they allege, the title was vested in the grantee in secret trust for the grantor and to defraud the creditors of the grantor.

In view of this state of the pleadings, no question could be made as to whether or not the McCracken deed was intended as a mortgage.

I think the judgment and order denying a new trial must be affirmed, and it is so ordered.

Mr. Justice BELCHER did not express an opinion.