[Civ. No. 770.    Third Appellate District.—June 28, 1911.]

NORTHERN ASSURANCE COMPANY OF LONDON, a
Corporation, Plaintiff, v. MARTHA STOUT, Defendant-
Respondent, R. F. BURNHAM and W. H. BURNHAM,
Partners Under Firm Name of HAMILTON MERCAN-
TILE COMPANY, Defendants, and CRAMER MEAT
AND PACKING COMPANY, a Corporation, Defend-
ant-Appellant.

CONTRACT TO SELL LAND TO COTENANTS—PURCHASE ON INSTALLMENTS
—TIME OF ESSENCE—DEFAULT—FORFEITURE—ELECTION NOT RE-
QUIRED.—Where a contract to sell land to two tenants in common
upon installments expressly made time of the essence of the contract,
a default of both cotenants in the payment of an installment, as
provided in the contract, operated *ipso facto* as a forfeiture of
the contract, and of the rights of both vendees thereunder, with-
out the indication of an election to that effect by the vendor.

ID.—EFFECT OF FORFEITURE—SEVERANCE OF COTENANCY UNDER CON-
TRACT—EFFECT OF ABANDONMENT BY COTENANT — CESSATION OF
COTENANCY.—The effect of the forfeiture of the contract of joint
purchase by the cotenant was to sever the cotenancy under the
contract, and to vest all rights thereunder in the vendor; and where
thereafter one of the cotenants abandoned the possession and all
claim under the contract, taking with him all the funds belonging
to them jointly and never returned, the cotenancy ceased to exist.

ID.—IMPLIED CONTRACT OF VENDOR WITH REMAINING TENANT.—Where
the agent of the vendor who effected the original contract, with
full knowledge of the facts as to abandonment by the disappearing
cotenant after default, advised the remaining defendant to let all
rights lapse thereunder and to purchase the land for herself, and
she, after a lapse of time, without any further express contract,
commenced making payments on her own account until the full
purchase price was paid, without knowledge that the name of the
abandoning cotenant still remained on the books of the vendor, from
these facts a new contract is implied that she became the individual
purchaser of the property.

ID.—RIGHTS TO DECLARE HOMESTEAD UNDER EXECUTORY CONTRACT—
SOLE POSSESSION—NO RIGHT UNDER COTENANCY.—The sole pos-
sessor under the implied executory contract of purchase had the
right to declare a homestead upon her equitable interest in the
property; but no valid homestead could be declared under a pos-
session by tenants in common, whether holding under an executory
contract or not.

ID.—ABANDONMENT BY COTENANT—INTENTION.—It is held that the only rational conclusion to be drawn from the conduct of the disappearing cotenant, under all the circumstances, is that he intentionally abandoned the contract and the premises; and that, in determining his intention at the time of leaving, the court may consider all of his subsequent acts and omissions as well as the circumstances under which he left, though no subsequently formed intent can qualify the act of leaving.

ID.—SUBJECTS OF ABANDONMENT.—Title in fee cannot be abandoned, nor does it seem that a subsisting title under an executory contract of purchase, not dependent on possession, can be abandoned; yet when such a contract becomes terminated by forfeiture, the effect of which is to nullify the agreement, the naked possession of the tenant thereafter is the subject of abandonment.

ID.—RIGHTS OF VENDOR AFTER FORFEITURE OF JOINT CONTRACT OF PURCHASE.—The vendor after a joint contract of purchase by cotenants has been forfeited by default under the terms of the contract, in failing to make required payments, is entitled to act as if the contract had never existed.

ID.—CONDITIONAL POWER OF VENDOR TO WAIVE FORFEITURE—INTERVENING RIGHTS OF THIRD PARTY—RESALE OF LAND.—The vendor could have waived the forfeiture under such joint contract if there was no intervening right, but not otherwise. When he has resold the land, after forfeiture, the rights of the second purchaser will prevent the vendor's waiving of the forfeiture.

ID.—RIGHTS OF COTENANT AFTER COMPLETE FORFEITURE.—After the forfeiture by cotenants is complete, one of the cotenants may proceed as if the cotenancy had never existed; and an individual purchase by one of them thereafter cannot inure to the benefit of an absent cotenant.

ID.—KNOWLEDGE OF AGENT OF VENDOR IMPUTABLE TO VENDOR.—The knowledge of the agent of the vendor of the circumstance under which he advised the remaining cotenant to become an individual purchaser was imputable to the vendor, which was chargeable with notice that she was thereafter making the purchase on her individual account with the intention that it should become her individual property.

ID.—NATURE AND PROPER INFERENCE OF IMPLIED CONTRACT.—An implied contract may be said to exist where the intention of the parties, though not expressed in words, may be gathered from their acts, viewed in the light of surrounding circumstances. It will be implied that a party did make such an agreement as, under the circumstances disclosed, he ought in fairness to have made. The tender of payments by the remaining tenant, under the circumstances as appearing, must be treated as an offer to purchase the property, and the unqualified acceptance of such payments by the

vendor, with knowledge of the facts, was in effect an acceptance of the offer, and implied a contract.

ID.—VOLUNTARY ACCEPTANCE OF BENEFIT OF TRANSACTION—CONSENT TO OBLIGATIONS.—A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.

ID.—INSURANCE ON HOMESTEAD DECLARED BY IMPLIED PURCHASER— LOSS BY FIRE—INTERPLEADER—CLAIMS BY JUDGMENT CREDITORS— JUST DECISION.—Where the implied purchaser, after declaring a valid homestead on the equity held by her as sole possessor of the land, suffered a loss of her insured home by fire, and judgment creditors of the former cotenants laid claim to the insurance money, and the insurance company filed an interpleader, as between them, and it was stipulated that the question in dispute depended on the validity of the homestead, it is held that the findings and judgment of the trial court and the decision as to the validity of the homestead and as to all of the questions of law involved in the case, were just and should be affirmed.

APPEAL from a judgment of the Superior Court of Glenn County.    Wm. M. Finch, Judge.

The facts are stated in the opinion of the court.

Frank Freeman, for Appellant.

Ben F. Geis, for Respondent.

HART, J.—This is an appeal by the defendant, Cramer Meat and Packing Company, from the judgment, on the judgment-roll alone.

The complaint was filed by plaintiff to compel the defendants above named to interplead their alleged respective rights to the sum of $400, which was due from plaintiff on a policy of insurance issued by it to the defendant, Martha Stout, and underwritten on a building erected by her on a certain lot situated in Hamilton City, Glenn county, said building having been, after the issuance of said policy, destroyed by fire.

The facts, as adopted from the findings of the court, are these: On the eighteenth day of June, 1906, the Hamilton Land Company and one Joseph Dineen and the defendant, Martha A. Stout, entered into a contract in writing by which

the first named agreed to sell said Dineen and Stout, and
the latter agreed to purchase, a certain lot situated in said
Hamilton City. The purchase price of said lot was $300,
of which the sum of $50 was paid on the date of the execu-
tion of the agreement, and, by the terms of said instrument,
the balance was to be paid in "twenty-five equal monthly in-
stallments on or before twenty-five months from date hereof,
with interest thereon from date until paid, at the rate of
five per cent per annum." The second parties were to have
possession of said premises from the date of the agreement
and "to pay all taxes and assessments levied or assessed on
said land after the date hereof as they become due and pay-
able." The contract further provides: "Time is the essence
of this contract, and the balance of the purchase price must
be paid as it becomes due, and should second parties fail
to make any payment at the time stipulated, then this con-
tract is to be deemed canceled and of no effect, and first
party may enter and take possession of said premises as if
this contract had never been made, and all moneys paid prior
to the time of said failure shall belong to first party and be
deemed the amount due as rentals for the use of said prop-
erty." It is then provided that when said land is paid for
in full, according to the terms of said agreement, the first
party will execute and deliver to the second parties "a good
and sufficient deed conveying said land free from all en-
cumbrances."

The findings further show: "The said Dineen and Stout
took possession of said lot immediately upon the delivery of
said contract and began the erection of a building thereon,
and it was their intention to conduct a restaurant in the
building to be erected thereon, or in a part thereof as part-
ners, and to that end a few hundred dollars was deposited
in the partnership name of Dineen & Stout in a bank in
Chico, California, and the partnership contracted a number
of debts under the firm name, among them being the judg-
ments hereinbefore described, but the said lot was not a part
of the partnership property but the said Dineen and Stout
took said property as tenants in common.

"On July 11, 1906, Mrs. Stout and her family were sleep-
ing on said lot and had partially moved into the building
then in course of construction thereon; and on that day, and

before any of said deferred payments had been made, said Dineen abandoned said property and said contract and secretly left this part of the state of California for parts unknown, taking with him all of the partnership funds on deposit as aforesaid, amounting to about $350; and since the departure of said Dineen as aforesaid he has never asserted any interest in or claim to said property or said contract, nor made or offered to make any payments on said contract, nor has he returned to this part of the state.

"After the departure of said Dineen and before any of the deferred payments had been made as provided in the contract, and before any of the payments hereinafter set forth had been made, defendant Stout and said Howe, the agent of the Land Company, who had full knowledge of the foregoing facts, discussed between themselves the advisability of allowing the said contract to lapse by forfeiture by nonpayment of the installments remaining unpaid, to the end that Mrs. Stout might then acquire the property in her individual right, but no agreement was made to that effect, and neither the defendant Dineen nor the defendant Stout paid the first monthly installment within the time provided by the contract.

"That thereafter, on the twenty-fourth day of July, 1906, for the purpose of acquiring said property in her individual right and with the belief that her and said Dineen's rights under said contract were forfeited and that she could so acquire the legal title thereto, all of which was then and at all times since known to said land company, defendant Stout paid said land company $10 toward the purchase of said property, and thereafter continued to make monthly payments of $10 each until said property was fully paid for, and the said land company, with full knowledge of all of the aforesaid facts, accepted all of said payments and credited them on the original contract, and on the eighteenth day of July, 1908, indorsed the said contract as paid in full.

"The account on said land company's books respecting these payments was carried throughout the whole time covered by said payments in the name of Dineen & Stout, but the defendant, Stout, did not consent to or have knowledge of the fact that said account was so kept, and after all payments had been made as aforesaid, defendant Stout demanded a

deed from said land company. conveying said property to her, but the land company refused to comply with her demand on the ground that the contract was made in the name of. Dineen as well as in the name of the defendant, Stout.

"On September 25, 1906, while said building was in course of construction, but not fully completed, defendant Stout was residing therein with her family and occupying the same as the home of herself and family, at which time she had made three monthly payments of $10 each toward the purchase price of said lot as aforesaid, said defendant Stout duly executed and acknowledged according to law and filed with the county recorder of Glenn county, her declaration of homestead."

On the thirty-first day of October, 1906, the plaintiff executed to said Martha Stout its policy of insurance, to which we have hitherto referred, "whereby it insured her for a term of one year from said date against all the loss or damage by fire to an amount not exceeding $400, covering a dwelling-house" situated on the lot involved in this controversy. On the nineteenth day of September, 1907, said dwelling was destroyed by fire, and "thereafter said Martha Stout duly presented and filed with plaintiff her proof of loss under said policy, duly verified, for the full amount thereof."

On the twenty-fifth day of April, 1907, and the twenty-seventh day of April, 1907, respectively, the defendants, Hamilton Mercantile Company and Cramer Meat and Packing Company, obtained judgments in the justice court of the second judicial district of Glenn county against Joseph Dineen and Martha A. Stout, the first named for the sum of $213.82, with interest, etc., and costs then amounting to the sum of $29.80, and the last named for the sum of $123.85, with interest, etc., and costs then amounting to the sum of $30.40. On October 5, 1907, executions were issued upon said judgments in said actions and each was regularly served as a garnishment upon the plaintiff of the money due upon the said insurance policy issued to said Martha Stout and underwritten upon the dwelling erected upon the land in question by Dineen and Stout.

Upon the facts as found by the court and as briefly presented in the foregoing statement, the sole question submitted

here for determination is as to the validity of the alleged declaration of homestead filed upon the premises concerned in this action by Martha Stout.

The contention of the appellant, Cramer Meat and Packing Company, is that the land company waived the forfeiture of the contract and the rights of Dineen and Stout occurring by virtue of the default in the payment as prescribed by the contract of sale; that the payments were made by Stout and accepted by said company, and the installments so paid credited on said contract in execution of its terms, and that no implied contract of sale between said company and Martha Stout could, under such circumstances, have arisen.

But in a well-considered written opinion filed herein by the learned trial judge, Hon. Wm. M. Finch, the greater part of which opinion is set forth in the brief of respondent, he holds that, as time for the payment of the installments is expressly made by the contract of the essence thereof, the default on the part of Dineen and Stout in the payment of a certain installment, as called for by said contract, operated, *ipso facto,* as a forfeiture of the same and of the rights of the vendees thereunder; that, thereafter, the acts and conduct of the land company and Mrs. Stout, with respect to the property, as disclosed by the evidence, were such as to establish an implied agreement upon the part of the former to sell said property to Mrs. Stout in her individual right and an agreement upon her part to so purchase the same on the terms disclosed in the former agreement to which she was a party.

Unless we can say that the court's conclusions of law from the findings are erroneous or not in accord with the findings, the judgment cannot be disturbed. We perceive no inconsistency between the findings and the conclusions of law. To the contrary, no other just conclusions could well follow the findings. As to the latter, in the absence of a bill of exceptions, or a statement of the case or other authorized method of bringing up the evidence, this court must assume that the findings are sufficiently supported. And this proposition is equally true where the trial court, as here, has filed a written opinion in which it has presented and discussed some of the facts which the evidence has established, for, obviously, the opinion of the court, however elaborately it may purport

to deal with the facts, cannot supplant or be made to serve the purpose of a bill of exceptions or a statement of the case or any other recognized form of certifying the testimony to a court of appeal, and, consequently, cannot disturb in the slightest degree the presumption that must be indulged in favor of the findings where the appeal is upon the judgment-roll alone. We could, therefore, if we so desired, well rest the decision of this case on the findings and the judgment. But we are satisfied with the opinion of the trial judge stating and applying the law to the facts as found, and we shall, therefore, adopt from said opinion, as it appears in the brief of respondent, the following part thereof:

"In the making of the contract the land company was represented by Reuben Howe, who is admitted to have been the agent of the company. The said purchasers took possession of the lot and began the erection of a building thereon. It was their intention to conduct a restaurant in the building as partners, and to that end a few hundred dollars was deposited in the partnership name of Dineen & Stout, all of which Mrs. Stout testifies belonged to her. The contract for the purchase of the premises in question was not made in the partnership name, but the second parties took the property as cotenants.

"On July 11, 1906, Mrs. Stout and her family were sleeping on the lot and had partially moved into the building then in course of construction; and on that day, and before any of the deferred payments had been made, Dineen abandoned the property and secretly left this part of the state, taking with him all of the partnership funds on deposit, some $350.

"After the departure of Dineen, Mrs. Stout and Mr. Howe, the agent of the vendor, had a conversation as to the advisability of letting the contract lapse by forfeiture for nonpayment, to the end that Mrs. Stout might then acquire the property in her own name. Neither of the second parties paid the first monthly installment within the time provided by the contract, but on the 24th of July, 1906, Mrs. Stout paid the land company $10. Thereafter Mrs. Stout continued to make monthly payments of $10 on or before the 18th of each month, except that the payment for the month of April following was made on the 19th, and the company

credited these payments on the contract, and on July 18, 1908, indorsed the contract as paid in full. We here insert the finding upon this question, which is as follows:

" 'That thereafter, on the twenty-fourth day of July, 1906, for the purpose of acquiring said property in her individual right and with the belief that her and said Dineen's rights under said contract were forfeited and that she could so acquire the legal title thereto, all of which was then and at all times since known to said land company, defendant Stout paid said land company $10 toward the purchase of said property, and thereafter continued to make monthly payments of $10 until said property was fully paid for; and the said company, with full knowledge of all the aforesaid facts, accepted all of said payments and credited them on the original contract, and on the eighteenth day of July indorsed the said contract as paid in full.'

"On the 25th of September, 1906, at which time the building was not fully completed, but Mrs. Stout was living therein with her family, and she theretofore having made three monthly payments of $10 each, she executed and filed with the county recorder her declaration in due form claiming the premises as a homestead.

"The account on the land company's books was carried throughout the whole time in the name of Dineen & Stout, but it does not appear that Mrs. Stout consented to or had any knowledge of how the account was kept. After all payments were made Mrs. Stout demanded a deed of the property to her and the company refused on account of the fact that the contract was in the name of Dineen as well as Mrs. Stout. Dineen has never since his departure asserted any interest in the property, or made or offered to make any payments on the contract, nor has he returned to this part of the state. Mrs. Stout insured the building with the plaintiff and it was thereafter burned. Certain judgment creditors hereinbefore referred to levied upon the proceeds of the insurance in the hands of the plaintiff, and since Mrs. Stout also claimed the same money the plaintiff brought this action to have it determined to whom the money should be paid, making all of the claimants defendants. At the trial it was stipulated by the parties that the court should determine the sole question of the validity of the alleged home-

stead, and render judgment for Mrs. Stout, if the homestead was found to be valid, and otherwise for the other defendants.

"The authorities are uniform that one who holds possession of land under an executory contract of purchase may declare a valid homestead therein. The decisions in this state are equally uniform in holding that a valid homestead cannot be created in lands held in cotenancy. The important question then is whether Mrs. Stout and Mr. Dineen were cotenants when the declaration of homestead was made. There can be no doubt that from the date of the contract of purchase to the departure of Dineen they were tenants in common of the property, and the question is whether there was a severance of such cotenancy. The only rational conclusion to be drawn from the conduct of Dineen under all the circumstances of the case is that he intentionally abandoned the contract and the premises. In determining his intention in leaving, the court may consider all of his subsequent acts and omissions as well as the circumstances under which he left; not that a subsequently formed intent can in any manner qualify the act of leaving, but his subsequent conduct may be looked to in ascertaining what his intent was at the time he left. In so far as Dineen was able to do so he abandoned his rights in the premises. Could he divest his title by mere abandonment? It seems clear that title in fee cannot be so divested. (*Davenport* v. *Turpin,* 43 Cal. 597.) It is equally clear that title by naked possession can be so divested. (*Gluckauf* v. *Reed,* 22 Cal. 469; *St. John* v. *Kidd,* 26 Cal. 264; *McCann* v. *McMillan,* 129 Cal. 350, [62 Pac. 31].)

"Title under an executory contract of purchase not being dependent upon the fact of possession, it is at least doubtful whether, under the circumstances of this case, Dineen could divest himself of title by mere abandonment, independent of any question of estoppel, adverse possession or forfeiture. Then as to forfeiture: By the terms of the contract, time of payment is made of the essence thereof, and failure to make payment at the time provided worked a forfeiture without the necessity of the vendor's indicating its election to claim a forfeiture, and the effect of such forfeiture was to nullify the agreement, and the vendor was thereafter entitled to act as if the contract had not existed. (29 Am. & Eng.

Ency. of Law, 683.)    Thereafter, of course, the vendor could have waived the forfeiture, so long as the rights of third persons did not intervene, but not otherwise. 'After a forfeiture, where the vendor has resold the land, the rights of the vendee will prevent the vendor's waiving the forfeiture.' (25 Am. & Eng. Ency. of Law, 685.)    A state may waive a forfeiture, and if, before a waiver, the state resells the land forfeited, the waiver will not have the effect to divest the rights acquired by the second purchaser.    (*Borland* v. *Lewis,* 43 Cal. 569.)    Where time is of the essence of a contract of purchase, failure to make payment at the time specified works a forfeiture.    (*McAdams* v. *Felkner,* 140 Cal. 354, [73 Pac. 1064].)    Under the facts of the case last cited, the decision supports the doctrine that after default in payment under a contract of the character of that in this case, if the vendor resells the land, the rights of the second purchaser will prevent the vendor's waiving the forfeiture.

"By nonpayment of the installment due July 18, 1906, Mrs. Stout and Mr. Dineen forfeited all their rights under the contract, and thereafter the land company was at liberty to resell the property, either to Mrs. Stout or to any other person.    Had Mrs. Stout then purchased the property by agreement with the land company, after the forfeiture, in the absence of fraud, she would have taken it freed from any claim of Dineen as cotenant or otherwise.    There was a severance of the cotenancy by the forfeiture; all interests were united in one person, the land company.    The forfeiture was complete, without the necessity of any affirmative action by the vendor, and while the vendor might have waived the forfeiture, it did not do so.    If the contract had provided for a forfeiture at the option of the vendor, and, after default, the vendor had declared the contract forfeited, the parties would then have been in the same position that they were after the default in this case.    In either case it would still have been within the power of the vendor to waive the forfeiture, either expressly or by unequivocal acts manifesting an intention to waive it.    Had the contract provided for a forfeiture, not absolutely, but only at the option of the vendor, in the event of nonpayment at the time specified, then, of course, the act of one cotenant after forfeiture and prior to the exercise of such option by the vendor would

inure to the benefit of his cotenants; but after the forfeiture is complete then a cotenant may proceed as if the cotenancy had never existed. The principle is not unlike that involved in a redemption by a cotenant of lands sold under foreclosure. Prior to the expiration of the period allowed for redemption, the purchase of the property or its redemption by one cotenant will inure to the benefit of all, but after the period of redemption has expired, either of the former cotenants may purchase the property as his own, without incurring any liability to his former cotenants.

"Since the knowledge of Howe, the agent, was the knowledge of the land company, it must be held that the company was aware of all the circumstances surrounding the transaction, the abandonment of the property by Dineen, the default in payment, the fact that Mrs. Stout was making the payments thereafter for herself and not for the cotenancy, and while the company did not expressly resell the premises to her as it might lawfully have done, it did accept her payments to the full amount of the purchase price first agreed upon, with full knowledge of the facts, knowing that such payments were made by her with the intention and expectation of acquiring the premises as her individual property, and in such a case I am of the opinion that an implied contract resulted between the parties in the terms mutually understood between them, though not expressed in words.

"An implied contract may be said to exist where the intention of the parties, though not expressed in words, may be gathered from their acts, viewed in the light of surrounding circumstances. It will be implied that a party did make such agreement as under the circumstances disclosed he ought in fairness to have made. The land company having accepted payment from Mrs. Stout for the property, it ought in fairness to transfer it to her, and I do not understand that the land company is endeavoring to escape that obligation, but that in its refusal to convey to Mrs. Stout its only purpose was to be protected from any claim which Dineen might have to the property. Mrs. Stout's tender of payment, in view of the circumstances under which it was made, must be treated as an offer to purchase the property, and the unqualified acceptance of such payment by the company was in effect an acceptance of her offer. A voluntary acceptance of

the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting. (Civ. Code, sec. 1589; *Simmons* v. *Bedell,* 122 Cal. 341, [68 Am. St. Rep. 35, ·55 Pac. 3].)''

We think the judgment is a just one, and, for the reasons stated in the foregoing, it is affirmed.

Chipman, P. J., and Burnett, J., concurred.