[Civ. No. 3898.   Third Appellate District.—November 1, 1929.]

CALIFORNIA RESTAURANT EQUIPMENT COMPANY (a Corporation), Respondent, v. GRACE E. WEBER, Appellant; ARTHUR CRESSE, etc., Intervener.

Lyle Pendegast for Appellant.

McClure, Griffin & Yokum and Carl M. Yokum for Respondent.

Davis & Thorne for Intervener.

THOMPSON (R. L.), J.—This is an appeal from a judgment for plaintiff in an action in replevin.

July 10, 1924, the plaintiff and Frederick H. Weber entered into an executory contract by the terms of which certain equipment was purchased for a restaurant in Los Angeles for the sum of $2,136.82, which was partially paid on delivery of the personal property. The balance of the purchase price was to be paid, together with interest thereon, in specified installments. It was provided that the title to the property should remain in the vendor until the purchase price was fully paid, and that upon default in the payment of any installment when due the entire unpaid balance should thereupon automatically become due without notice, and the vendor was then authorized to repossess the property without process of law, in which event the money which had been paid upon the purchase price was deemed to have been applied in compensation for the use and depreciation of the property. It was further stipulated that "Time is expressly made the essence of this contract, but the acceptance by the vendor of any payment past due shall

not be considered a waiver of this clause." The principal purchase price had been reduced to about $700. The vendee was in default of payments of several installments.

Subsequently, on December 9, 1924, the vendee died. Upon proceedings duly had, his wife, Grace E. Weber, was appointed and qualified as executrix of his estate, and as such took charge of the restaurant with the equipment which is involved in this action. Although the executrix made payments on the purchase price of said property aggregating the sum of $285, the estate was still in default. The restaurant business did not prosper. The executrix was unable to pay the deferred installments on the contract or the rent for the building. ▮ She closed the restaurant and abandoned the business. The plaintiff then took possession of the property involved in this action, pursuant to the provisions of the contract. The contract was thereby terminated. (*Northern Assur. Co.* v. *Stout,* 16 Cal. App. 548 [117 Pac. 617].) A controversy exists as to whether the plaintiff then actually repossessed the property. While there is a conflict of testimony in that regard, we are of the opinion there is substantial evidence to support the implied finding that it did so. The executrix testified: "Q. Did you discontinue the operation of the restaurant? A. Yes, I did. Q. How many days before the plaintiff— A. Just a few. Q. Then the plaintiff came and took possession of the restaurant and equipment? A. Yes, that is correct." With respect to taking possession of the property for a default in payments, Mr. Alkire, the credit manager of the plaintiff, testified: "The Court: Q. You say you repossessed this property? A. Yes, sir. . . . Q. Then she had closed it (the restaurant) up? A. Yes. Q. How many days before? A. Probably between three days and a week. . . . The landlord having called us two or three times to say the place was some five or six hundred (dollars) behind in rent, he wanted possession of it and I went to his place and got permission to leave the equipment in there until I could make some satisfactory arrangement to rearrange it and sell to Mrs. Weber or someone else. . . . She gave me the key to the place. . . . (She said) If I would rearrange the place economically . . . (she would) rebuy the place if I could stretch the payments over a long period of time and make the payments small. . . . She gave me the keys to the place

and I went and got a cabinetmaker and . . . told her of the terms that we would rearrange the place and resell it to her, namely $110 down and $50 a month. . . . Three or four days later she phoned me . . . she had arranged to get the money. . . . Then I took the cabinetmaker out there and on completion of the work turned the keys over to her, and the possession of the place. I had possession all the time these changes were being made, by permission of the landlord, and she took the old name off the window and put on the new (name), Weber's Coffee Shop.'' The foregoing demonstrates an exercise of ownership over the property on the part of plaintiff with an evident purpose of forfeiting the contract with the estate of the deceased and reorganizing the business on a more economical basis in order to resell the same property ''to the widow or someone else,'' giving her the benefit of all previous payments in the hope that she might succeed in operating the restaurant. Subsequent to this repossession of the property, on May 29, 1925, a new executory sale contract was made between the plaintiff and Grace E. Weber, individually, for the same property, in the exact form in which the original document was drawn, except that the amount of the installments was reduced. By the terms of this second contract Mrs. Weber was credited with the payments which had been previously made by her husband, and she assumed similar obligations to those of her deceased husband under the former agreement, together with an additional indebtedness of $360 for the improvements in the store fixtures which were added by the plaintiff at the request of Mrs. Weber as above stated.

Upon repossessing the property the original contract was canceled. Mr. Alkire testified in this regard: ''As far as our books were concerned there was (then) no old contract.'' A new account was opened May 28, 1925, against Grace E. Weber, in the name of Weber's Coffee Shop, which she adopted as the designation for her restaurant business. For a period of time she operated the restaurant in her individual capacity, making payments under the second contract, which were credited to her account, in the aggregate sum of $336. Misfortune continued to follow her enterprise. The business was not a success. Again she defaulted in the payment of her installments. She testified: ''Q. Was a balance due on the contract? A. Yes, I think there was.

Q. And it had not been paid? A. That is correct.'' Mr. Alkire also testified in that regard: ''The last payment was made toward that contract on October 6th. Q. How much? A. $20. Q. How much should have been paid? A. $50.''

In December, 1925, the plaintiff instituted this action and again repossessed the restaurant equipment by means of a writ of replevin. The defendant Grace E. Weber answered and filed a complaint in intervention in her individual capacity and also as a representative of her husband's estate, affirmatively charging the plaintiff with a breach of the contract and praying for reimbursement for the money paid on account of the purchase price of the property. Arthur Cresse also intervened as a creditor of the estate. Upon trial the court found that the plaintiff was the owner and entitled to the possession of the property in question and accordingly rendered a judgment in its favor, without assessing any damages.

The defendant Grace E. Weber has appealed as an individual and also in her representative capacity. She challenges the sufficiency of the evidence to support the findings of plaintiff's ownership and right of possession of the property chiefly on the ground that the default in the payment of installments on the purchase price was waived by subsequent acceptance of deferred payments.

There is no merit in this contention. Even though it be conceded that the execution of the new contract constituted a waiver of the delay in the payments of the installments then due, default in the payment of subsequent installments occurred. Assuming that the plaintiff lawfully repossessed the property before the execution of the new contract of sale, Grace E. Weber, individually, as the succeeding vendee of the property, was in default. If the property was not so repossessed and the estate of the deceased vendee still retained its equitable interest in the property, Grace E. Weber, in her representative capacity, was in default of payments of subsequent stipulated installments. The interest of the estate in the property was thereby forfeited.

The contract provided that ''Time is expressly made the essence of this contract, but the acceptance by the vendor of any payments past due shall not be considered a waiver of this clause.'' Under this express provision of the contract the acceptance of installments after they had

become due did not constitute a waiver of the right to repossess the property for default in subsequent payments. (*Pacific Finance & Investment Co.* v. *Pierce,* 48 Cal. App. 600 [191 Pac. 1115]; *McConnell* v. *Redd,* 86 Cal. App. 785, 790 [261 Pac. 506].)

The appellant now claims that the plaintiff never actually repossessed the property before assuming to transfer it to her individually, and that the estate therefore retained an interest therein which ·it could not be thus deprived of; that if all the money which she paid plaintiff subsequent to the execution of the second contract were applied on the first contract, it would fully pay the entire original purchase price and the estate would then be entitled to the property. Upon the execution of the second contract, however, a new obligation for $360 additional was incurred by Grace E. Weber. She claimed to have made the payments on this last contract from her own earnings. Section 1479 of the Civil Code provides in part: ''Where a debtor, under several obligations to another, does an act, by way of performance, in whole or in part, which is equally applicable to two or more of such obligations, such performance must be applied as follows:

'' . . . Two. If no such application be then made, the creditor, within a reasonable time after such performance, may apply it toward the extinction of any obligation, per-.formance of which was due to him from the debtor at the time of such performance; except that if similar obligations were due to him both individually and as a trustee, he must, unless otherwise directed by the debtor, apply the performance to the extinction of all such obligations in equal proportion; and an application once made by the creditor cannot be rescinded without the consent of the debtor.''

After the incurring of the new obligation to pay $360 for remodeling the restaurant at the request of Grace E. Weber individually, she was personally charged in an entirely different account with this sum together with the unpaid balance of the purchase price of the equipment. The plaintiff elected to credit all her payments which were made subsequent to the execution of the new contract to this last account, which he had a right to do pursuant to section 1479, *supra.* She made no request to apply these

payments upon the old contract. Upon the contrary, the entire transaction which resulted in the cancellation of the old contract and the execution of the new one was with her consent and at her request. In view of the fact that the first contract was terminated by the breach thereof and that the property was repossessed by the vendor, it was empowered to make a subsequent valid contract to resell the equipment to any purchaser obtainable and upon any terms which were acceptable. The subsequent executory sale contract with Grace E. Weber as an individual was valid and binding. For the breach of this latter contract her interest in the property was forfeited and the plaintiff was entitled to the possession thereof. A sufficient *prima facie* showing of plaintiff's ownership of the property was shown.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.