## Case No. 5,174.

GAINES v. LIZARDI et al.
SAME v. DE LA CROIX et al.
SAME v. NEW ORLEANS.
[1 Woods, 56.][1]
Circuit Court, D. Louisiana. June, 1870.

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

John A. Campbell, for complainant.
McConnell & Taylor, for defendants.

BRADLEY, Circuit Justice. These cases are before us on mandates from the supreme court of the United States, and motion is made to enter the proper decrees, pursuant to said mandates. By reason of the explicit manner in which the views of the supreme court are expressed in its opinions, as found in Gaines v. New Orleans, 6 Wall. [73 U. S.] 642, and in Gaines v. De la Croix, Id. 719, and in Gaines v. Hennen, 24 How. [65 U. S.] 553 (which last is adopted in the present cases), very little discretion is left to this court. Some questions, however, have been raised, which it is necessary now to determine.

First, the complainant [Myra Clark Gaines] claims a decree not only for the lands of which the several defendants were possessed at the time of filing the bills respectively, but for the proceeds of lands formerly belonging to Daniel Clark, which the defendants had previously possessed and sold before the filing of said bills. She claims to hold the defendants as trustees for her of the lands thus previously disposed of, and elects to receive the purchase money, instead of following the lands themselves.

This claim, I think, is untenable. The claim of the defendants is adverse to that of the complainant. There is no privity between them. They stand and have always stood at arm's length. The defendants claimed the lands to be theirs by one title; she claimed them to be hers by another. There was no privity or trusteeship between them. Had the defendants, by any fraudulent practice, or by the fraudulent practice of their grantors or predecessors (known to them), procured the legal title to the lands, then they might have been held as trustees, and if they had disposed of the same, especially to innocent purchasers, might have been made to respond for the proceeds thereof. In such case the lands themselves might have been placed beyond the complainant's reach, and the proceeds might have been the only fund to which the complainant could resort. But in the present case the defendants never acquired the title of the complainant, nor legal title at all, but a spurious title; and their conveyance of the lands has transferred no title to the vendees; but the lands still remain subject to the complainant's title and are recoverable by her in whosesoever hands they may be. The conveyance thereof by the defendants to third parties has not in the slightest degree had the effect to place any barriers or obstacles in the way of the complainant to their recovery. Her title remains perfect and unimpaired. Had the legal title been transferred, though subject to her right to avoid it, her election to take the proceeds would have confirmed that title in the possessor, and her remedy would have been exhausted. But her election in the present case does not extinguish her title to the lands. Being the legal title, it remains valid; and a further act on her part, by way of release or other conveyance, in addition to the act of election, would be necessary to effectuate justice. And to whom should such release or conveyance be made? The persons that would have been entitled thereto have not been made parties to the suit; and the court does not know who they are, and can give no directions on the subject. And if they had been made parties, the difficulty would not have been surmounted; because they can never be converted into trustees for her by claiming a title paramount to hers without any actual fraud on their part.

The cases in which a person entitled to the possession of personal property has been allowed to waive his right to the specific property, or to damages for its detention, and to sue the wrongful appropriator thereof for the price of it, as upon a sale, do not bear upon the point in question. For a recovery either of damages for the detention or of the price as for a sale, changes the title of the property, and is itself an election to have the money instead. And the cases of Gaines v. Chew, 2 How. [43 U. S.] 619; Hallett v. Collins, 10 How. [51 U. S.] 174; Oliver v. Piatt, 3 How. [44 U. S.] 333, Jenkins v. Eldridge [Case No. 7,266], and the other authorities, relating to real estate, referred to by counsel for the complainant, as far as I have been able to examine them, do not conflict with the views now presented.

The decrees, therefore, should be confined in each case to the lands of which the parties respectively, either by themselves or their tenants, were, or claimed to be, in possession at the time of filing the bill. As to lands which they may have possessed prior to that time, they are only liable for the rents and profits or fruits whilst thus in possession. In fact, the bill is nothing but what is sometimes called an ejectment bill, and this court has jurisdiction of the case only on the ground of discovery, and the complainant should be satisfied to recover what she could have recovered in an action of ejectment, or the equivalent action under the laws of Louisiana.

The next question relates to the accountability of the defendants for the rents and profits or fruits of the lands possessed by them respectively. The defendants contend that they are not liable for these, because they were possessors in good faith; or if liable at all, they are entitled to compensation for their improvements; and they rely on those provisions of the Code which declare: (1) The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses. Article 3414. (2) Every possessor has a right to gather, for his

benefit, the fruits of the thing, until it is claimed by the owners, without being bound to account for them, except from the time of the claim for restitution. Article 3416. (3) He has also the right in case of eviction from the thing reclaimed, to retain it till he is reimbursed the expenses he may have incurred on it. Id. Whatever might be the views of this court on this point, were it open before us for discussion, is of no consequence. It seems to be entirely covered by the judgment of the supreme court.

To understand that judgment, it is necessary to premise that the lands in dispute belonged to Daniel Clark at the time of his death in August, 1813; that the said Clark left behind him a will dated in 1811, making Richard Relf and Beverley Chew his executors, and Mary Clark, his mother, his general legatee, which will was admitted to probate; that this was not his last will, but that he made another will shortly before his death, in which he acknowledged the complainant to be his legitimate and only daughter, and made her his universal legatee, giving to his mother an annuity, and to other persons certain legacies, and making Francois Duseau De la Croix, James Pitot and Joseph D. D. Bellechasse, his executors; that this will was suppressed, and did not, nor did her paternity come to the knowledge of the complainant till about 1834, when she applied for probate of said will, which was at first refused; that nevertheless, probate was granted in December, 1855; and this suit was therefore commenced in December, 1856. That, in the mean time, in or about 1820, Relf and Chew, claiming to act as executors of the will of 1811, and as attorneys of Mary Clark, the legatee under it, but without any authority from the proper court, undertook by action and private sale, to sell the lands of Daniel Clark, and did sell the same to various purchasers, from whom, mediately or immediately, the defendants claim title to the lands. That even after the complainant came of age, and discovered her paternity, and the fact that her father had made the will of 1813, she commenced various suits to recover the said lands, both against the city of New Orleans and others, and her claim became universally known.

These suits met with various fortune, but finally, in the case of Gaines v. Hennen, reported in 24 How. [65 U. S.] 553, a decree was made in the supreme court of the United States, which has been reaffirmed and adopted by the same court in this case, and which it is necessary to examine in order to understand fully the form and effect of the decree to be entered now. It seems to me that the decree of the supreme court in the case of Hennen thus reaffirmed and adopted in these cases, has fully answered the question as to the claim of good faith on the part of defendants, as bearing both on the matter of rents and profits, and on the matter of reclamation for improvements.

The decree in the Hennen Case declares: "That the said Richard Relf and Beverly Chew, at the time and times when, under the pretended authority aforesaid, they caused the property so described and claimed by the defendant, Hennen, to be set up and sold by public auction, on the 19th day of December, 1820, and when they executed their act of sale aforesaid, of the 28th of December, 1820, to the said Azelie Lavigne, had no legal right or authority whatever so to sell and dispose of the same, or in any manner to alienate the same; that the said sale at auction, and the said act of sale to Azelie Lavigne in confirmation thereof, were wholly unauthorized and illegal, and are utterly null and void; and that the defendant Hennen, at the time when he purchased the property so described and claimed by him as aforesaid, was bound to take notice of the circumstances which rendered the actions and doings of the said Beverly Chew and Richard Relf, in the premises, illegal, null and void; and that he, the said Hennen, ought to be deemed and held, and is hereby deemed and held to have purchased the property in question, with full notice that the said sale at auction, under the pretended authority of the said Richard Relf and Beverly Chew, and their said act of sale to said Azelie Lavigne were illegal, null and void, and in fraud of the rights of the person or persons entitled to the succession of the said Daniel Clark." The court further decreed that the complainant was justly and lawfully entitled to the property claimed and held by Hennen, together with all the yearly rents and profits accruing from the same from the time he went into possession, and they remanded the cause to this court with directions: (1) To cause Hennen to surrender all the property claimed and held by him into the hands of complainant. (2) To cause an account to be taken of the yearly rents and profits accrued and accruing from the property since it came into Hennen's possession, and to be paid to the complainant; such account to be taken subject to the laws of Louisiana in cases of such recovery, as is now decreed in favor of the complainant. Such was the decree in the Hennen Case.

In the case now before us, the supreme court, in their opinion, say that the sales made by Relf and Chew (under whose conveyance the defendants claim title), whether made as executors or as attorneys of Mary Clark, were void and conveyed no title [Gaines v. New Orleans] 6 Wall. [73 U. S.] 711, 712; and after adverting to the fact that the defendants say they are purchasers in good faith for value without notice, or have acquired titles from those who were, add (page 816): "We cannot see, in view of the discussion already given to this case, how this plea can be true, but as it cannot avail the defendants, if true, it is unnecessary to discuss the evidence further in order to ascertain whether it is true or false. For

the question at issue is only on the legal title."

The court further hold that the plea of good faith can only aid the defendants on the plea of prescription. They then add: "But the title of the complainant is not barred by prescription, according to the law of Louisiana. This defense was made in the case of Gaines v. Hennen [supra]. and disposed of adversely to the defendant, and is no longer an open question in this court. The description relied upon by the defendants in this case is the same that was relied upon by the defendant in that, and as the proofs are common to both, it follows, as the plea of prescription was not available in the one, it is not in the other." The court, in conclusion, say: "The questions of law and fact applicable to those rights (the rights of the complainant) were determined in the case of Gaines v. Hennen. After argument by able counsel, and mature consideration, we have reaffirmed that decision." Thus, taking the opinion and decree of the supreme court in the Hennen Case, and their opinion in these cases, together, it is very manifest that the supreme court have adjudged against the plea of good faith set up by the defendants.

It is true that, in this case, the court, considering the legal title as the question involved, seem to regard the fact of good faith, except as bearing on the question of prescription, as not material; but they also, in conformity with the views expressed in Gaines v. Hennen, say that they do not see how the plea of good faith can be true, and they expressly adopt the decision in that case against the plea of prescription in reference to which they admit that the plea of good faith is pertinent, and I also understand them to adopt the definitive decree made in that case, which awards rents and profits to the complainant and against the defendant. And this (as we have seen from the Code) could not be done if the defendants were purchasers in good faith. The whole effect of their decision, therefore, is against the plea of good faith for any purpose whatever.

The judgment is that the titles attempted to be created and passed by Relf and Chew were bad—not only bad, but void—and that the defendants. claiming under and through them, ought to have known it. This judgment we are bound to carry out. We cannot inquire whether it is right or wrong. We are to presume that all the questions involved in it were duly and fully discussed, as we have no doubt they were.

The decrees presented to me seem to be in conformity with the views and mandate of the supreme court except that against the city of New Orleans, which will be so modified as to embrace only the lands which were in possession of the city at the time of filing the bill in this case.