[S. F. No. 8985. In Bank.—March 4, 1921.]

# FRED L. LEZINSKY et al., as Trustees, etc., Appellants, v. MASON MALT WHISKEY DISTILLING COMPANY (a Corporation), et al., Respondents.

[1] TRUST—ENFORCEMENT OF EXPRESS OR RESULTING TRUST—PLEADING AND EVIDENCE—MATERIAL VARIANCE—CONSTRUCTIVE TRUST.— Where in an action to enforce an express or resulting trust the findings show a trust based on fraud or breach of fiduciary duty, which is commonly designated as a constructive trust, the variance is material.

[2] ID.—EXPRESS OR RESULTING TRUST—STATUTE OF LIMITATIONS.— The statute of limitations does not begin to run in the case of an express or resulting trust until there has been a repudiation of the trust.

[3] ID.—CONSTRUCTIVE TRUST—STATUTE OF LIMITATIONS.—The statute of limitations begins to run in the case of a constructive trust upon the doing of the acts by reason of which the trust arises.

[4] ID.—RESULTING TRUST—TRANSFER TO ONE FOR MONEY PAID BY ANOTHER.—Where property is acquired in the name of one person but for a consideration furnished by another, it will be taken, in the absence of countervailing circumstances, that the latter is the real owner, and that the former holds the title in his name merely as trustee.

[5] ID.—TRANSFER OF PROPERTY OF OLD CORPORATION—CONSIDERATION OF ISSUANCE OF STOCK IN NEW CORPORATION—BELIEF AS TO INDIVIDUAL OWNERSHIP—RESULTING TRUST NOT CREATED.—Where the real estate and personal property of a defunct corporation were transferred to a new corporation in consideration of the issuance to the transferor of shares of stock in the new corporation, and the transferor believed that he was the owner of the real estate under a purchased tax title, which was in fact void, and that his father and not the old corporation was the owner of the personal property, no resulting trust arose in favor of the old corporation against the transferor.

[6] ID.—SALE OF PROPERTY OF ANOTHER—BELIEF OF OWNERSHIP—ABSENCE OF TRUST.—Where one who is not the owner of certain property, but believes he is, sells or otherwise disposes of it, no resulting trust arises as to the proceeds of the sale in his hands.

[7] ID.—ACTION TO ESTABLISH TRUST—STOCK ISSUED IN CONSIDERATION OF TRANSFER OF CORPORATE PROPERTY—TRANSFER BY CORPORATION ITSELF—FINDING NOT IMPLIED.—In an action to estab-

---

4. General nature of resulting trust, note, 51 Am. Dec. 751.

lish a resulting trust in favor of the creditors and stockholders of a defunct corporation in shares of stock in a new corporation issued in consideration of the transfer of the real and personal property of the old to the new corporation, a finding that on the day of the transfer the old corporation was the owner and in possession of the property, that on that day, pursuant to the proposal made by the individual transferor and accepted, all the property was delivered by him to the new corporation and that at all times since such transfer the new corporation had continued to own, occupy, and hold the same, cannot be taken as a finding that the old corporation itself made the transfer.

[8] ID.—TRANSFER OF CORPORATE PROPERTY—CONSIDERATION RECEIVED BY PRESIDENT—RESULTING OR CONSTRUCTIVE TRUST.—A trust, either resulting or constructive, arises in favor of a corporation against its president as to anything he might receive by a transfer or sale of its property.

[9] ID.—TRANSFER OF STOCK—RELIEF FROM EQUITY—PURCHASER FOR VALUE.—A transferee of stock held by the transferor in trust in order to be relieved from the equity existing against his transferor, must show affirmatively that he took it as a purchaser for value.

[10] ID.—STOCK TAKEN IN NAME OF SON—ADVANCEMENT OF CONSIDERATION BY FATHER—PRESUMPTION.—There is no presumption that stock issued to a son is held by him for his father because the father advanced the consideration, as, in view of the relationship, it is to be presumed that the stock was taken by the son by way of gift or advancement from the father.

[11] TRUSTS—FOUNDATION OF RESULTING TRUSTS—RELATIONSHIP OF PARTIES.—A resulting trust is not founded on the simple fact that money or property of one has been used by another to purchase property, but on the fact that as between them, consciously and intentionally, one has advanced the consideration wherewith to make a purchase in the name of the other.

[12] ID.—PRESUMPTION OF RESULTING TRUST REBUTTABLE.—The presumption that it was the intention of the parties that the ostensible purchaser should acquire and hold the property for the one with whose means it was acquired is rebuttable, and where the evidence of the circumstances show that such intention did not exist, no trust arises.

[13] ID.—CONSTRUCTIVE TRUST — INTENTION IMMATERIAL. — Wherever by fraud or in breach of a fiduciary relation one uses the property of another to make a purchase in his own name, a trust arises regardless of intention.

[14] ID.—ACTION TO ESTABLISH RESULTING TRUST—CORPORATE STOCK—IMPLIED FINDING.—In an action to establish a resulting trust in

---

11. Sufficiency of evidence to establish constructive or resulting trust, note, **Ann. Cas.** 1916D, 1194.

corporation stock, a finding that defendant did not take his stock under such circumstances that it can be presumed that he took it with the intention of holding it as a trustee is implied in the finding that he and his codefendant took and held their stock from the beginning as their own exclusive property.

[15] ID.—DECISION NOT IN VIOLATION OF CONSTITUTIONAL RIGHTS.— In this action to declare a trust in corporation stock, the decision that no resulting trust was established in the property is not in violation of any right guaranteed by the federal constitution. (On denial of rehearing.)

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Theodore A. Bell, A. E. Cooley, A. Walter Allen and Percy V. Long for Appellants.

Thomas P. Boyd, Morrison, Dunne & Brobeck, Garret W. McEnerney and McWilliams & Hatfield for Respondents.

OLNEY, J.—This is an action brought by two individuals as trustees for the creditors and stockholders of an expired California corporation having the name of Mason Malt Whiskey Distilling Company against an existing Nevada corporation of the same name, and two individuals, John and Clinton Mason, to have it declared that the stock of the corporate defendant possessed by the individual defendants is held by the latter in trust for the creditors and stockholders of the expired California corporation. Issue was joined upon material allegations of the complaint, a trial was had, findings of fact were made by the trial court, and upon the findings judgment was given for the defendants. The plaintiffs appeal upon the judgment-roll alone, and their primary contention is that upon the facts as found judgment should have gone in their favor.

The corporate defendant may be dismissed from consideration. The only relief sought against it is that in case it be held that the individual defendants hold their stock in it as trustees it be required to cancel the existing certificates for the stock and issue new ones in accordance with the trust. The real relief sought is solely against the individual defend-

ants. As to them, the complaint alleges that their stock was acquired by them in consideration for the property of the California corporation which was turned over to the Nevada corporation under an agreement between the former and the two defendants that the latter would hold the stock so acquired as trustees for it until such time as a dividend should be declared upon the stock, when it was to be transferred to its beneficial owner. The transaction occurred in 1905, and the present action was not brought until 1915, but the complaint alleges that no dividend upon the stock was declared until shortly before the commencement of the action, and that until that time the defendants had never repudiated the trust.

As the above statement would indicate, a reading of the complaint leaves no doubt but that the trust which it seeks to enforce was an express trust, based on the alleged agreement of the defendants. The trial court found against any such agreement having been made, and also that the defendants had never repudiated the trust until 1915, for the reason that until then they were wholly unaware of any claim that a trust existed. Although such was the finding of the court, the contention of plaintiffs' counsel, a contention which in fairness we should say was apparently made before the trial court as well as before us, is that the existence or nonexistence of an agreement giving rise to an express trust is wholly immaterial; that the complaint alleges and the findings show that the consideration for which the defendants acquired their stock was furnished by the California corporation, so that what is commonly designated as a resulting trust arose in its favor as against the defendants, and that because the facts giving rise to such a trust are both alleged and found the plaintiffs are entitled to judgment upon the findings. We may grant, at least for the purposes of discussion, that it would not be a material variance if the complaint were based upon the alleged existence of an express trust and the findings showed but a resulting trust. [1] But it should be noted at the outset that the variance is material, if the findings show facts which would possibly create a trust, but such trust would be neither an express nor a resulting trust, but what is commonly designated as a constructive one, that is, a trust based on fraud, or, what is really a particular kind of fraud, a breach of some duty

incident to a fiduciary relation. The complaint contains no allegations of fraud or breach of fiduciary duty or of facts from which either would appear, and a cause of action based upon such facts is manifestly very different from one to enforce either an express or resulting trust, based as they are upon the intention of the parties, expressed in one case and presumed in the other.

The defense of the statute of limitations would also be materially affected according as the trust was an express or resulting trust on the one hand or a constructive trust on the other. [2] In the first case, the statute would not begin to run until a repudiation of the trust (*Butler* v. *Hyland*, 89 Cal. 575, [26 Pac. 1108]), and the complaint alleges and it is found that there was no repudiation by the defendants here until shortly before the commencement of the action. The plaintiff's cause of action, therefore, if it be one to enforce an express or resulting trust, was not barred when the action was commenced. [3] In the case of a constructive trust, however, the statute begins to run at once upon the doing of the acts by reason of which the trust arises (*Hecht* v. *Slaney*, 72 Cal. 363, [14 Pac. 88]), and any cause of action of that character against the defendants was barred years before. Furthermore, plaintiffs' counsel themselves insist stoutly that they are not seeking to recover upon a constructive but solely upon a resulting trust. The question, therefore, as to the existence of a constructive trust is not in the case and may be disregarded, and the sole question is as to the existence of a resulting trust upon the facts found.

[4] The rule is too well established to admit of serious dispute that where property is acquired in the name of A but for a consideration furnished by B, it will be taken, in the absence of countervailing circumstances, that B is the real owner, and that A holds the title in his name as trustee merely, that is, there is a resulting trust with him as trustee and B as beneficiary. The ultimate question in this case is whether or not a case of that character appears from the facts found. Those facts, so far as material, are these:

The California corporation was organized in 1891 for the purpose of engaging in the business of distilling whiskey. It continued in existence until November 30, 1905, when it expired through forfeiture of its corporate franchise for failure to pay the state annual license tax. At that time,

and for years before, its stock had been owned one-half by the plaintiff, George Lezinsky, and one-half by John Mason, Sr., the father of the two defendants. John Mason, Sr., was the president of the company, and the other plaintiff, Fred L. Lezinsky, was its secretary. The directors were the two Lezinskys and the two John Masons. The corporation acquired a lot in the town of Sausalito with a distillery upon it, and also the goodwill and business of the John Mason Distillery, which, presumably, was the name of the distillery upon the property, and the formulas and recipes of John Mason, Sr., for making whiskey. It was the owner of these things in June, 1905, the title to the real property being in the name of one, Samuel L. Lezinsky, for some reason unexplained, but he holding it as naked trustee only. Whether the corporation in 1905 was a going concern doing business does not appear from the findings, but, according to both sides, the evidence was that it had ceased business some seven years before.

Some time previous to June, 1905, the real estate had been sold for taxes and a deed to the purchaser executed by the tax collector. On the 15th of that month, the defendant, Clinton Mason, secured a conveyance of the real estate from the purchaser at the tax sale, paying therefor the sum of $430. Four days later the Nevada corporation was organized by John Mason, Sr., his two sons, and two other persons. Like the old corporation of the same name, it was organized for the purpose of engaging in the business of distilling whiskey. Immediately after its organization and on June 23, 1905, Clinton Mason submitted to it a written proposal whereby he offered to transfer to it the real property mentioned, with the distillery, the goodwill and business of the John Mason Distillery, and all formulas and recipes for making whiskey owned by John Mason, Sr., in consideration of the issuance to him of twenty-four thousand nine hundred shares of the corporation's stock and the issuance to the five organizers, of whom he was one, of twenty shares each. This proposal was accepted by the corporation the same day, and immediately thereupon the personal property was, according to the findings, delivered to it, and it also took possession of the real property. The possession so acquired, the corporation maintained from then on, using the property in its business. Four days after the acceptance of his pro-

posal Clinton Mason executed a conveyance of the real property to the corporation, and the stock called for in his proposal was issued, although not exactly as specified in the proposal. Of the twenty-four thousand nine hundred shares that were to be issued to him, 3,320 shares were issued to third persons, and the balance to himself and his brother equally, 10,840 shares to each. In the following October, John Mason, Sr., executed a bill of sale to the corporation of the personal property, and some eight years later Samuel L. Lezinsky, in whose name the title to the real property stood as trustee for the old corporation, conveyed that property to the new corporation. Why this conveyance was made is not found, but it is found that it was made without "any further consideration," presumably further than might be shown by the facts found and already recited, that it was made at the instance and request of the two defendants, and with the consent of the plaintiff, George Lezinsky, and at his direction, but that it was not requested by the Masons or consented to by Lezinsky for the purpose of performing any agreement with the old corporation.

Along with these findings there is also the most important finding that Clinton Mason, when he made the offer to the corporation, believed that the tax title to the realty which he had purchased was good, although it was in fact bad, and also believed that his father was the owner of the personal property and had been the owner of the realty at the time of the tax sale. In other words, the finding is that Clinton Mason made his offer in the belief that he was dealing only with property owned by himself and his father and which they had the full right to deal with for their own benefit and as they pleased. There is no explanation of why Clinton Mason so believed, and, in the absence of any explanation, every natural inference from the other facts found would be to the contrary. But there may well have been a sufficient explanation appearing in the evidence, and in any case the correctness of the findings is not under review and there is no necessary inconsistency between the particular finding and the others. This being the case, we must accept the finding as it is.

There are also findings that the turning over of the old corporation's property to the new was not done under any arrangement between the old corporation and the defend-

ants; that there was no agreement by the defendants that they would hold their stock in trust, and that they had always held it exclusively as their own.

[5] The case has been discussed before us as if upon the foregoing facts it was the same as to both defendants. We do not so view it. As to Clinton Mason, a determinative finding is the one that he made his proposal to the new corporation and presumably carried through the transaction in the belief that the old corporation had no interest in the property he was assuming to transfer, and that he was himself the owner of the realty and his father the owner of the personalty. If this were his belief, and we must take it that it was, no trust would result as to him from his assuming to convey the property, even if he were not the real owner of it. As to him, the case is not one of his purchasing something, in this case the stock in the new corporation, with a consideration furnished by the old. So far as he is concerned, the old corporation furnished nothing. The furnishing of the consideration, by reason of which a resulting trust arises, is a furnishing, not to the seller of the property bought, but to the purchaser. The whole theory upon which a trust is imposed upon the purchaser in such a case is that, as between him and a third person, it was the latter who furnished the consideration with which the property was acquired, so that it will be presumed that as between them it was intended that the purchase be for the benefit of him who supplied the means with which to make it. Manifestly, this theory has no application to a case where the purchaser uses what he believes to be his own property in making the purchase. So far as he is concerned, the consideration for the sale is what he himself furnishes. [6] The present case, in other words, is, as to Clinton Mason, the not uncommon and very simple one of one who is not the owner of certain property, but believes he is, selling or otherwise disposing of it. No resulting trust in such a case arises as to the proceeds of the sale in his hands. (*W. R. Ritter Lumber Co.* v. *Lowe,* 75 W. Va. 715, [L. R. A. 1916E, 718, 84 S. E. 566]; *Gaines* v. *Lizardi,* 1 Woods, 56, [9 Fed. Cas. 1039].)

[7] Before, however, dismissing the discussion of the case as to this defendant, notice should be taken of the contention of plaintiffs' counsel that it must be taken from the findings that the old corporation itself transferred its property to

the new. There is no express finding to that effect. The contention is based upon the fact that it is found, first, that on June 23, 1905, the old corporation was the owner and in possession of the property; second, that on that day, pursuant to the proposal made by Clinton Mason and accepted, all the personal property was delivered at his instance to the new corporation and it took possession of the real property, and, third, that the new corporation "at all times since has continued to *own*, hold, and occupy the same." It is difficult to see how the new corporation could immediately become the owner of the property without a transfer from its former owner, and it is claimed that because of this we must assume that such a transfer was in fact executed. There are two answers to this. In the first place, the findings conform upon these points to the exact language of the complaint, so that the complaint as well as the findings fail to show expressly any transfer by the old corporation to the new. Yet that fact, if it existed, was an important one for the plaintiffs, and we think the wording of the complaint— a third amended complaint, by the way—justifies the conclusion that the failure to allege that fact was an intentional one. In view of this fact, and of the rule that findings should, if possible, be construed to uphold the judgment, we think we would not be justified in holding that it was found that the old corporation executed a transfer on June 23, 1905, merely because of the finding that the new corporation from then on continued to "own" the property.

In the second place, assuming that there was such a transfer, there is nothing to show that Clinton Mason was aware of it, or that, if he was, his belief that he and his father were the real owners of the property was affected thereby. The making of such a transfer, if known to him, would have been very material as evidence that he did not have that belief, but it would not be conclusive. There might have been a transfer by the old corporation and he might have known of it and yet he might have believed that he and his father were the real owners, and have carried the transaction through in that belief, and as one solely for his and his father's benefit. We cannot disregard the finding as to his belief, and it is determinative. The judgment must, therefore, be affirmed as to the defendant, Clinton Mason.

As to the other defendant, John Mason, however, the case is not so simple. There is no finding either that he was or that he was not ignorant of the fact that the old corporation was the real owner of the property. Furthermore, he is not protected by the finding that his brother so believed, although it was the latter who purported to deal with the new corporation. The finding is that Clinton believed, not that he, but that his father was the owner of the personal property transferred, and this fact, taken in conjunction with the fact that a part of the stock taken in return for the property was not taken by him, gives rise to the necessary inference that as to the personal property Clinton was acting merely on behalf of his father, and that the stock which he did not take, but went to his brother, represented his father's interest in the transaction. The case, then, as to John Mason must be taken as one wherein the stock which he received, he received from his father as the real party to the transaction.

[8] Now, it would seem that in view of the fact, not alleged but found, that the father was at the time the president and a director of the old corporation, a trust, either resulting or constructive, would arise in its favor as against him as to anything he might receive by a transfer or sale of its property. (*Wells* v. *Robinson,* 13 Cal. 133.)    [9] If this be true, then the defendant, John Mason, took his stock subject to this trust, for he, in effect, took it from his father, and it does not appear that he took it as a purchaser for value, something which must affirmatively appear in order to relieve him of the equity existing against his transferor. Upon the facts found, therefore, it must, we think, be taken that John Mason took the stock which he received as the successor of his father, and, therefore, took it subject to a trust in favor of the old corporation.

It does not follow, however, that judgment should go against him in this action. It can go against him only, as we said at the outset, in case such trust was as to him a resulting trust. If the trust was a constructive trust as to the father, it is evident that it is no more than such as to the son. We may, therefore, dismiss this alternative from consideration and consider the matter as if the trust subject to which the father would have held the property was a resulting trust. Even so, the son would not himself hold the

property subject to a trust of that character, unless it also appeared that as between himself and his father he was not holding it on his own account but for his father. If, as between himself and his father, he took and held the stock for himself, then, while it would be true that he took and held it subject to the trust to which it was subject in the hands of his father, such trust would as to him be a constructive and not a resulting trust, and one against which the statute of limitations would commence to run immediately. This was directly decided in *Norton* v. *Bassett*, 154 Cal. 411, [129 Am. St. Rep. 162, 97 Pac. 894], where, the trustee under a resulting trust dying, and the legal title to the property passing to his son as heir, it was held that while the son took the title subject to the trust, the trust was as to him a constructive one, since it was imposed upon him by operation of law and without his consent and contrary to his intention, with the result that the statute of limitations began to run in his favor at the moment the legal title came to him, i. e., at the death of his father.

Even though it be true, then, that the stock would have been subject to a resulting trust in the hands of his father, and that John Mason took it subject to whatever equity would exist against it in the hands of his father, there was no resulting trust as to him because of these facts, and consequently no judgment is now possible against him because of them, unless it also appears that as between his father and himself he held the stock for the former. There is nothing to show this, and it is directly negatived by the findings. [10] The only thing which appears and which it can be claimed would show that he so held the stock is the fact that as between his father and himself it was his father who advanced the consideration for which it was acquired. This would be sufficient except for the relationship between them, but, in view of that relationship, it is to be presumed that the stock was taken by the son by way of gift or advancement from the father. (1 Perry on Trusts, sec. 143; 3 Pomeroy's Equity Jurisprudence, sec. 1039; *Hamilton* v. *Hubbard*, 134 Cal. 603, [65 Pac. 321, 66 Pac. 860]; *Rossiter* v. *Schultz*, 43 Cal. App. 716, [185 Pac. 997].) There is nothing whatever to rebut this presumption. In addition, there is the direct finding that John Mason has at all times held his stock as his own exclusive property. It follows, then, that

even though John Mason took his stock from his father subject to a trust in favor of the corporation, yet such trust was as to him but a constructive trust at best, and any cause of action upon it is not within the present complaint and was long ago barred by limitation.

The only other alternative upon which it can be claimed that a resulting trust arose as to John Mason is that as between him and the corporation directly it was the latter who furnished the consideration for the stock. This, as we understand it, is in fact the real contention of plaintiffs' counsel. But they proceed upon the theory apparently that merely because the property of the corporation was actually used as the consideration for the stock, a resulting trust arises. This is not true. **[11]** A resulting trust is not founded on the simple fact that money or property of one has been used by another to purchase property. It is founded on a relationship between the two, on the fact that as between them, consciously and intentionally, one has advanced the consideration wherewith to make a purchase in the name of the other. The trust arises because it is the natural presumption in such a case that it was their intention that the ostensible purchaser should acquire and hold the property for the one with whose means it was acquired. **[12]** But this presumption is rebuttable, and, if the evidence or the circumstances show that such intention did not exist, no trust arises. It is because of this that no trust will arise in the case mentioned of parent and child upon a showing merely that it was the former who advanced the consideration. Because of the relation between the parties in such a case, the natural presumption is that a gift or advancement was intended. In a number of other respects, which we need not enumerate, the rules in regard to the existence of resulting trusts are consistent only with the theory that such trusts depend upon the intention of the parties. As Professor Pomeroy says, himself italicizing the word "intention" (3 Pomeroy's Equity Jurisprudence, sec. 1031) : "In all species of resulting trusts *intention* is an essential element, although that intention is never expressed by any words of direct creation. There must be a transfer, and equity infers the intention that the transferee was not to receive and hold the title as the beneficial owner, but that a trust was to arise in favor of the party whom

equity would regard as the beneficial owner under the circumstances.'' The same idea is found in 1 Perry on Trusts, section 126, where it is said: ''This rule [as to resulting trusts] has its foundation in the natural presumption, in the absence of all rebutting circumstances, that he who supplies the purchase money intends the purchase to be for his own benefit, and not for another, and that the conveyance in the name of another is a matter of *convenience and arrangement between the parties* for collateral purposes, and this rule is vindicated by the experience of mankind.'' (The italics are ours.)

[13] We, perhaps, should say again at this point that we are speaking only of resulting trusts. Wherever by fraud or in breach of a fiduciary relation one uses the property of another to make a purchase in his own name, a trust arises regardless of intention. But such trusts are constructive trusts purely, and, as we have said, there are no allegations here of fraud or breach of fiduciary duty, and any cause of action by reason of a trust depending upon them cannot be considered. If the plaintiffs are to recover, it must be solely because of a resulting trust dependent upon the intention of the parties.

It is not sufficient, therefore, that it appear merely that the old corporation's property was used to acquire the defendants' stock in the new. It must also appear, directly or indirectly, that, as between them and it, it was intended that they should acquire and hold the property for it. In the case of Clinton Mason, such intent is flatly negatived by the finding that he believed the property to be his own and that of his father. There is no such finding as to John Mason, but neither is there a finding that such intent existed as between him and the corporation, and in its absence the question is, Are such facts and circumstances shown that such intent is to be presumed? It is to be presumed if it appear that as between him and the corporation it was the latter who consciously to him advanced or furnished the consideration. But if he were not conscious of that fact, then there was no furnishing of the consideration by it so far as he was concerned, there is no relation between him and it, and there is nothing upon which to predicate a presumption that it was, in the language of Professor Pomeroy, ''the intention that the transferee was not to receive and hold the

title as the beneficial owner." Does it appear, then, that it was known to John Mason that the property which was being used to pay for his stock was owned by the old corporation? If this at least does not appear, there is no theory upon which the claim of a resulting trust against him can be sustained.

There is no finding which declares this to have been the fact, nor does it necessarily appear from the facts which are found. That which is found is at most that the defendant's father, in breach, we will assume, since there is no explanation of his conduct, of the fiduciary obligation which he owed the old corporation as one of its managing officials, undertook through the medium of his son Clinton to turn over the possession and enjoyment of its property in consideration for stock issued to his two sons. These facts would give rise to a trust subject to which the son John Mason would hold his stock, but it would as to him be a constructive trust only. But so far as a resulting trust is concerned, there is nothing in them which necessarily infers that he knew that the property was not that of his father but of the corporation, or that he understood that it was the latter who was advancing the consideration with which to make the purchase. This is true even though, as found but not as alleged, he was a director of the corporation at the time. That fact would be but evidentiary at best, and it loses much of the significance which would otherwise attach to it by reason of the fact which both sides say appeared in the evidence that the corporation had been practically defunct for years. It is not at all unlikely that he so knew and understood, and it may well be that in the absence of any explanation or counter-evidence the trial court would have been justified in so finding upon the evidence alone of the facts which the court finally found. But whether there was any explanation or counter-evidence we do not know. It is perfectly possible, for instance, that it appeared that the father represented to his sons, and they believed, that he had acquired the property of the corporation by virtue of some arrangement with it or with its only other stockholder. In any event, we cannot make the finding, and unless the facts which are found are consistent only with the defendant knowing it was the property of the corporation that was being dealt with, so that they are the practical

equivalent of such a finding, it must be taken that such fact does not appear. That there is no necessary inconsistency between the facts found and the defendant receiving his stock without being aware that it was the corporation's property which was paying for it, we think fairly plain from what we have already said.

[14] Furthermore, there is the finding, heretofore adverted to, that the two defendants took and held their stock from the beginning as their own exclusive property. Implied in this is a finding that John Mason did not take his stock under such circumstances that it can be presumed that he took it with the intention of holding it as trustee. The result is that while the findings, because of facts appearing in them which are not supported by the averments of the complaint, may very possibly show that he originally held his stock subject to a constructive trust, there is lacking in them the finding of an element essential for the existence of a resulting trust, by reason of which alone the plaintiffs would be entitled here to judgment against him. It follows that the judgment against the plaintiffs must be affirmed as to him as well as to his brother, Clinton Mason. .

Judgment affirmed.

Shaw, J., Sloane, J., Wilbur, J., Angellotti, C. J., Lennon, J., and Lawlor, J., concurred.

Rehearing denied.

In denying a rehearing the court filed the following opinion on April 2, 1921: .

THE COURT.—[15] In denying the petition for rehearing we deem it proper to say that we see no force in the claim that the decision is in violation of any right guaranteed by the federal constitution.

Angellotti, C. J., Wilbur, J., Olney, J., and Sloane, J., concurred.