[L. A. No. 429. In Bank.—November 18, 1898.]

JAMES J. SIMONS, Respondent, v. JANE BEDELL et al., Appellants.

ESTATES OF DECEASED PERSONS—RIGHT OF DISTRIBUTION—EQUITY JURISDICTION—EQUITABLE RIGHTS OF HEIR AGAINST CO-HEIR.—It is within the jurisdiction of the superior court sitting in probate to determine who is entitled to the distribution of the estate of a deceased person; but, if no objection is raised to the equity jurisdiction of the court over an action brought by one of two sole heirs at law to have it determined as against the other heir and her husband, and the administrator of the estate, that plaintiff was entitled in equity to a conveyance of the interest

of the other heirs in land belonging to the estate, and to have it adjudged that plaintiff was equitably entitled to all the proceeds of the sale of such land made by the administrator, the subject matter will be treated upon appeal as within the equity ·jurisdiction.

ID.—SUFFICIENCY OF COMPLAINT IN EQUITY—PROPOSED WILL—AGREEMENT FOR DISPOSITION OF PROPERTY—A complaint in equity by the husband of the decedent, showing that deceased expressed a desire to will property in this state to him, and property in New York to her mother, who was the only other heir, and that it was agreed that if decedent would make no will, and would deed the New York land to her mother, the mother and her husband would convey the land in this state to the plaintiff, and that she conveyed the New York property to her mother upon the understanding that her parents were to convey to plaintiff as agreed, though not distinctly alleging that decedent refrained from making a will devising the land in this state to plaintiff in consideration of the promise of her parents, is not obnoxious to a general demurrer for want of such distinct allegation, nor for violation of the rule that only ultimate and not evidentiary facts should be pleaded.

ID.—AGREEMENT OF FATHER WITH DECEDENT—AGENCY—CONDITIONS OF CONVEYANCE TO MOTHER—DUTY AS TO NOTICE.—Where the decedent's father agreed with her that he and her mother would convey the lands in this state to plaintiff, if she would convey the New York property to her mother, it became the duty of the father correctly to inform the mother of the proposed conditions; and it is not necessary to allege or prove or find that the husband was the agent of his wife in making the agreement.

ID.—KNOWLEDGE OF CONDITIONS—DUTY OF GRANTEE.—If the mother did not know of the conditions until after the death of her daughter, it became her duty when they were discovered either to comply with them by joining in the required conveyance to the plaintiff, or to surrender the property conveyed to her to the estate of the decedent.

ID.—RATIFICATION OF AGREEMENT—ENFORCEMENT OF CONDITIONS IN EQUITY.—The mother's acceptance and retention of the benefits of the conveyance made to her, which was the consideration of the agreement to convey the lands in this state to the plaintiff, was a ratification of the agreement, and she cannot retain its benefits and repudiate its obligations, but equity will compel the performance of them.

ID.—VALIDITY OF AGREEMENT AS TO WIFE—CONSTRUCTION OF CODE.—Section 3390 of the Civil Code, providing that an agreement "to perform an act which the party has not the power lawfully to perform," and an agreement "to procure the act or consent of the wife of the contracting party, or of any third person," has no application to a case where the wife, though she could not be compelled in the first instance to carry out the terms of the

agreement made by her husband, has accepted a conveyance which is the consideration of the agreement, and retained its benefits.

ID.—SPECIFIC PERFORMANCE AGAINST MARRIED WOMAN—UNACKNOWLEDGED AGREEMENT.—Where a married woman has received and retained a conveyance which is the full consideration of a fair and equitable agreement to convey her separate estate, a specific performance of such agreement will be enforced, notwithstanding there is no acknowledgment of an instrument of agreement to convey.

ID.—SALE OF PROPERTY BY ADMINISTRATOR—ALTERNATIVE DECREE.— Where the property to be conveyed was sold by the administrator by the order of the probate court, and the proceeds of the sale remain in the control of the court, it is within the power of the court in the case in equity to make an alternative decree directing payment to the plaintiff, or that he is entitled to the distribution of the proceeds, subject to the payment of the debts, charges and expenses of the estate.

ID.—EVIDENCE—DECLARATIONS OF DEFENDANT.—A conversation had between the decedent and her mother, who is one of the defendants, in reference to the property in controversy, was relevant; and a conversation between the decedent and her father, who is a codefendant, tending to prove the conditions upon which the deed to the mother was made, was admissible, though not made in the presence of the mother, and though there was no previous knowledge of or consent to the conditions on her part.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial.   J. W. McKinley, Trial Judge.   M. T. Allen, Judge, denying new trial.

The facts are stated in the opinion.

William E. Cox, for Appellant.

C. C. Wright, for Respondent.

CHIPMAN, C.—Plaintiff brought this action to obtain the judgment of the court that he was entitled to certain funds in the hands of the administrator of his deceased wife's estate. Plaintiff prevailed in the action, and this appeal is from the judgment in his favor and from the order denying motion for a new trial, and is presented by statement.   A general demurrer to the complaint was overruled.   The complaint and a supplementary amended complaint allege and the court found: That defendants Otis T. and Jane Bedell were husband and wife and

the parents of deceased, Jennie R. Simons; July 10, 1890, one
Julius Collins conveyed to said Jennie R. (before her marriage
to plaintiff) lot 9 of the Abbott Kinney tract in the city of
Los Angeles for the consideration of two thousand five hundred
dollars, which was paid by the said Jane Bedell; thereafter, to
wit, about January 1, 1892, and in contemplation of the mar-
riage between the said Jennie and plaintiff, in addition to what-
ever right she had derived by said deed, Mrs. Bedell gave to her
said lot 9; soon thereafter, to wit, about January 18, 1892, in
contemplation of said marriage, said Jane executed and delivered
to her said daughter Jennie a deed conveying to her certain
real property in the city of New York of the value of about
fifteen thousand dollars; thereafter, to wit, about February 15,
1892, the said Jane informed her said daughter Jennie that it
was not just to her sister that she, Jennie, should have both the
New York city and the Los Angeles property, and it was there-
upon agreed between the said Jane and her daughter Jennie
that the latter should execute and deliver to said Jane her ob-
ligation for two thousand five hundred dollars secured by mort-
gage on the New York property, and that by such execution of
said obligation she, the said Jennie, would subsequently become
the owner of said properties by free and unencumbered title; the
note and mortgage were accordingly executed about February
15, 1892; on March 18, 1892, plaintiff and the said Jennie inter-
married; the said Jennie paid on account of said indebtedness
the sum of four hundred dollars and all interest to March 1,
1893; during the summer of 1892 she became afflicted with con-
sumption and died on April 18, 1893; after plaintiff's said mar-
riage he conveyed to his said wife certain real property situated
in the city of Los Angeles, being certain lots in block C, Thomas
tract; prior to the death of the said Jennie she "exhibited much
solicitude and anxiety concerning the disposition of her prop-
erty, and expressed the desire to said defendants Bedell to make
a will and bequeath said lot 9 and said lots in block C to this
plaintiff, and said New York property to her mother, the said
defendant Jane"; the said Otis, father of deceased, represented
to her that it was unnecessary to make a will and that it would
incur unnecessary cost and expense and delay in its probate, and
that if she would execute and deliver a deed to her mother of

said New York property it would accomplish the same object, to which the said Jennie replied that she wanted plaintiff to have the Los Angeles property, to which the said Otis replied that if she would make a deed to her mother of the New York property, they, the defendants Bedell, would convey to plaintiff the Los Angeles property; relying upon the said representations of her father, she, on February 15, 1893, did make and deliver to him a deed conveying the New York property to her mother, and he agreed to hold the said deed during the lifetime of the said Jennie, and relying upon said promises of her said father she made no will; shortly after the death of the said Jennie (which occurred April 18, 1893) the said Otis delivered said deed to the said Jane, and she accepted the same; the court found, though it is not alleged in the complaint, that she was fully informed of said agreement made by the defendant Otis, as aforesaid. It was alleged and found that both she and said Otis have ever since the death of said Jennie refused and neglected to execute to plaintiff a deed to said Los Angeles property, though often requested so to do. It further appears from the complaint and the findings that plaintiff was appointed administrator of his wife's estate November 27, 1893, and that as such administrator he sold, under order of the court in 1895, all the said Los Angeles real property, the subject of the estate, and received the consideration paid; that in July, 1896, he resigned his trust, and defendant Bonebrake was appointed administrator; that plaintiff paid over to defendant Bonebrake the funds received for the sale of said property, who now holds the same as such administrator. The judgment of the court was "that all the funds in the hands of the said administrator . . . . derived from the sale of property described in the complaint, is the sole and separate property of plaintiff, deducting first therefrom all debts which have been duly presented and allowed against the estate of said Jennie R. Simons, deceased, and all costs and expenses to which said fund may be legally subjected during the course of administration," et cetera. It is conceded by defendants, and found by the court, that plaintiff and defendants Bedell are the sole heirs at law of deceased. There is much conflicting evidence, and upon certain facts found the court might have reached a different conclusion. But we

think there was evidence tending to justify the findings, and we cannot say that the court erred in its adoption of the facts as found.

1. Defendants contend that the demurrer should have been sustained, as no cause of action was stated. The question was not presented by the demurrer, nor is it argued in the briefs as to the right of plaintiff to go into a court of equity to determine who is entitled to distribution—a question which it seems to us was clearly within the powers of and should have been determined by the court sitting in probate. (*Siddall v. Harrison*, 73 Cal. 560.) We are not prepared to say, however, that the court was without jurisdiction, and as all parties seem to have treated the matter as properly brought before the court we shall so treat it. Defendants urge that there is nothing in the complaint to show that said Jennie "intended to and would have made a valid will bequeathing to plaintiff all her interest in the Los Angeles property" had it not been for the action of her parents; nor "that she would have bequeathed any part of her property to plaintiff if she had made a will"; that the complaint states the evidence instead of the ultimate facts, and that "evidentiary facts cannot be substituted in a pleading for an allegation of the facts to be put in issue." (Citing *Green v. Palmer*, 15 Cal. 415; 76 Am. Dec. 492; *Thomas v. Desmond*, 63 Cal. 426; *Feeney v. Howard*, 79 Cal. 525; 12 Am. St. Rep. 162; *Harris v. Hillegass*, 54 Cal. 463.) It is not distinctly alleged that the said Jennie abstained from making a will devising her Los Angeles property to plaintiff in consideration of the promise made to her by her father, that he and her mother would convey their interest in that property to plaintiff should she die, but we think it sufficiently appears from the complaint that the parties so regarded the agreement, and that she conveyed the New York property upon the understanding that her parents were to convey their interest in the Los Angeles property to plaintiff. We do not think that the rule with regard to pleading ultimate facts instead of the evidence of those facts is so far violated as to bring the pleading within the cases cited and to make it obnoxious to a general demurrer.

2. It is objected that there is no finding of fact that Otis T. was the agent of his wife Jane, nor is there any allegation of

such agency in the complaint; and it is claimed that the finding that she was fully informed of the agreement made by Otis is not a finding that she had such knowledge when she accepted the deed to the New York property, and the finding is outside any issue raised in the pleading. It is not disputed that Mrs. Bedell was at her home in New York when the alleged agreement was made in Los Angeles, and that the knowledge came to her after the death of her daughter, plaintiff's wife. And Mrs. Bedell testified that her husband did not communicate to her the agreement as it is testified to by plaintiff and found by the court, but that the agreement was subject to her approval. There was evidence tending to support the finding as to the agreement, and the question is, Could the mother retain the title to the property and refuse to carry out the agreement under which it was conveyed? We do not see that it was at all necessary to allege or prove an agency in the husband from his wife. The New York property had been conveyed to plaintiff's wife by her mother. So, also, had the Los Angeles property been conveyed by her direction, and plaintiff had conveyed to her some property. In anticipation of death plaintiff's wife desired that the New York property should, in that event, go back to her mother and the Los Angeles property should go to her husband. Her father was there with her during her last illness, and to him she communicated her wishes and to him she committed their execution. It was his duty to correctly inform his wife of the conditions upon which his daughter had made the deed, and he could not deprive plaintiff of the benefits of the agreement by misrepresenting its conditions to the grantee of the deed. If she did not know the conditions at its delivery she did later, which was the same in contemplation of law, and it was her duty either to comply with them or surrender the property conveyed. We think the foregoing views are sustained by ample authority. Some of the cases will be found in notes to the text in Devlin on Deeds, sections 1073, 1074, 1077. (See, also, *Lady Superior etc. v. McNamara,* 3 Barb. Ch. 375; 49 Am. Dec. 184.)

3. It is claimed by appellant that the agreement upon which plaintiff relies is void under the statute of frauds, not having been in writing. (Citing *Wittenbrock v. Cass,* 110 Cal. 1.) It

is also urged that, even if Otis T. could make such agreement for himself, he could not bind his wife. (Citing Civ. Code, sec. 3390.) The case cited was where a resulting trust not in writing was set up. Mrs. Cass had purchased the property with her own money and taken the title in her own name. Her agreement was to make a deed to her son and leave it in escrow until her death, in consideration of certain things to be done by him. It was held that no such trust arose. We do not think that case similar to the one here. Plaintiff's wife executed her deed, of property owned by her, to her mother without consideration, and delivered it in escrow to her father, to be delivered upon certain conditions and agreements. The condition of delivery happened, to wit, her death. She omitted to make provision for her husband by will and made no conveyance of the Los Angeles property to him, relying upon the conditions being performed upon which she made the conveyance to her mother. She owned both properties, and in fact conveyed to her mother property worth fifteen thousand dollars, subject to a mortgage to secure two thousand one hundred dollars, the amount then due; reserving to her husband lot 9, of the value of two thousand five hundred dollars, and the lots conveyed to her by him, which were sold at probate sale for the mortgage lien on them. The section of the code above referred to has no application to such a case, for there was here neither an obligation "to perform an act which the party had not the power lawfully to perform," nor "an agreement to procure the act or consent of the wife of the contracting party, or of any third person," in the sense there understood. It may be conceded that Mrs. Bedell could not be compelled to carry out the agreement, but she accepted the benefits and retained them, and equity will compel her to comply with the terms upon which such benefits were bestowed. She cannot profit by the act of one party to the agreement and repudiate her own obligation in respect of it. Her acceptance and retention of the consideration, after learning all the facts, was a ratification of the agreement by which it was paid. Equity and good conscience demand that the defendants Bedell either convey the New York property to the estate of Jennie Simons, deceased, or relinquish all claim upon the proceeds of the Los Angeles property.

4. It is further urged that under section 1093 of the Civil Code Mrs. Bedell cannot be compelled to convey her interest because she did not execute and acknowledge any instrument as prescribed by section 1186 and section 1191 of the same code. (Citing *Jackson v. Torrence,* 83 Cal. 521, where it is held that "specific performance cannot be compelled of an unacknowledged executory contract of a married woman to convey her separate property.") *Olson v. Lovell,* 91 Cal. 508, is cited where *Jackson v. Torrence, supra,* is commented upon. The governing principles of those cases are so obviously dissimilar from the principles underlying the case before us that we deem it unnecessary to say more than that the sections of the code and the cases cited do not apply. Had this action been brought for specific performance, and before the Los Angeles property was sold by the probate court, we cannot see that any essential element would have been lacking. The contract was concluded, certain, unambiguous, mutual, and for valuable consideration; it was fair in all its parts, free from misrepresentation or misapprehension, fraud or mistake, imposition or surprise; it was neither an unconscionable nor hard bargain, nor was its performance oppressive upon the defendants; and it was such contract as was capable of execution through a decree of the court. (Pomeroy's Equity Jurisprudence, secs. 1404, 1405, and notes.) It is true that the Los Angeles property was sold by the probate court, and a conveyance by the Bedells to plaintiff of their interest could not well be decreed; but the proceeds of the sale remain within the control of the court, and it is within its power to make the alternative decree directing payment to plaintiff or that he is entitled to distribution thereof subject to the payment of debts, charges, and expenses of the estate.

5. The only errors claimed in the admission of testimony are two: 1. A witness was called by plaintiff to relate a conversation she had with Mrs. Bedell at Los Angeles about the property just before the marriage of her daughter. The ground of the objection was that "it had no relevancy to the case and the nature of the conversation was not shown." We think the question was relevant. 2. A witness was asked to state what plaintiff's wife said in the presence and hearing of her father with relation to the property matters between herself and her hus-

band. The objection made at the trial was that the question was incompetent and immaterial. The objection now made is that Mrs. Bedell was not present. Mr. Bedell was present. The testimony was admissible as tending to prove the conditions upon which Mrs. Simons made the deed to her mother, even though the latter was not present. Counsel falls into error here as elsewhere in assuming that the previous knowledge and consent of Mrs. Bedell were necessary to bind her.

We discover no error in the judgment or order of the court, and therefore advise that they be affirmed.

Haynes, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Harrison, J., Garoutte, J., Van Fleet, J.

Beatty, C. J., dissented.

TEMPLE, J., dissenting.—I dissent. Conceding the validity of the contract stated in the principal opinion, it is nothing more than this: In consideration that Mrs. Simons would deed to her mother the New York property and would not make a will, defendants Bedell would convey to plaintiff, after the death of Mrs. Simons, the Los Angeles property. As Mrs. Simons owned the Los Angeles property, and under the contract was expected to die such owner, the title which defendants were to convey was what they would inherit from their daughter. Had they conveyed this to the plaintiff, their deed would not have authorized plaintiff to recover the property from the administrator. He would take as heir, and an heir cannot recover the property from the administrator before distribution. Bonebrake is administrator and holds the property as such. The estate has not yet been distributed. (*McDaniel v. Pattison,* 98 Cal. 86; *Siddal v. Harrison,* 73 Cal. 560.)

After the death of his wife plaintiff was appointed administrator and had the Los Angeles property sold and then resigned. A successor was appointed, and this suit was brought. In a suit for specific performance, which this is, it seems clear to me that the money must take the place of the real estate. Such it was

when the alleged contract was made, and it seems quite obvious to me that, even conceding that Otis T. was authorized to contract for his wife, the contract was within the statute of frauds. *Wittenbrock v. Cass,* 110 Cal. 1, seems altogether in point, except that this is a much plainer case than that was. There is not and cannot be a pretense of part performance here. Supposing, therefore, that Mrs. Bedell did ratify the agreement by accepting the deed, the contract is void.

Nor do I think there is any evidence to sustain the finding that Mrs. Bedell accepted the deed with full knowledge of the alleged contract. To the contrary, all the evidence upon the subject is to the effect that she was told that her husband had only told Mrs. Simons that they would convey the property if his wife, Mrs. Bedell, approved of it, subject to a mortgage for the amount of the debt on the New York property. Plaintiff's testimony and his letters all tend to show this.

I also think the case is, in principle, within the decision in *Jackson v. Torrence,* 83 Cal. 521, and that there was grave error in the admission in evidence of the statements of plaintiff's wife —not made at the time of the alleged contract, but subsequent thereto—as against Mrs. Bedell. It is assumed that the property had all belonged to Mrs. Bedell as her separate property.

Suggestion is made, however, that the evidence discloses that all the property was community property of Mr. and Mrs. Bedell. If so, then title to the New York property did not pass by Mrs. Bedell's deed to Mrs. Simons, and there was no consideration for the alleged agreement.

It might be argued with some plausibility that upon the facts found a suit might be maintained to cancel the deed to the New York property, but I am unable to comprehend any relief to which the plaintiff is entitled under those facts in regard to the Los Angeles property.

Henshaw, J., concurred in the dissenting opinion.