[Civ. No. 3069.  Third Appellate District.—April 22, 1926.]

ALMA TAYLOR et al., Appellants, v. EDWIN BUN-
NELL, Respondent.

[1] TRUSTS—ACTION TO ESTABLISH TRUST—HUSBAND AND WIFE—IN-
VOLUNTARY TRUSTEE—EVIDENCE.—In an action to establish a trust in real property, in determining whether the evidence is sufficient to show that defendant is an involuntary trustee of the property conveyed to him by his wife with the understanding that he would reconvey it to plaintiff, the evidence must be viewed in the light most favorable to plaintiff.

[2] ID.—TITLE—EVIDENCE.—In such action, the evidence was sufficient to show that defendant was the owner of a life estate only in the property and that he held the legal title to the remainder in trust for the benefit of plaintiff.

[3] ID. — HUSBAND AND WIFE — CONVEYANCE UPON PAROL PROMISE — CONSTRUCTIVE TRUST—STATUTE OF FRAUDS.—If one spouse, without consideration other than a parol promise to convey or hold land for the purpose of carrying out a trust in favor of the grantor, obtains an absolute deed from the other, the breach of promise is constructive fraud, and makes the grantee an involuntary trustee for the grantor, although at the time there was no

---

3.  See 13 Cal. Jur. 869; 25 Cal. Jur. 159; 26 R. C. L. 1240.

intention to perform, and in such a case a constructive trust arises and the statute of frauds has no application.

[4] ID. — DEEDS — DECLARATIONS OF GRANTOR SUBSEQUENT TO EXECUTION—EVIDENCE.—In an action to establish a trust in real property conveyed to defendant by his deceased wife, the trial court erred in admitting in evidence declarations of the grantor made after the execution of her deed, and not in the presence of her husband, in disparagement of the title thereby conveyed to him.

[5] ID.—DECLARATIONS AGAINST INTEREST—EVIDENCE.—In such action, the wife having conveyed the land to defendant either absolutely or impressed with a trust in favor of plaintiff, thus parting with all her pecuniary interest in the property upon the delivery of her deed to defendant, sections 1853 and 1870, subdivision 4, of the Code of Civil Procedure, relating to evidence of declarations of a deceased person against his pecuniary interest, have no application; and where plaintiff did not claim as successor to any interest remaining in the grantor after the execution of the deed to defendant, but claimed an interest conveyed by that deed, her interest in the land, if any, and that of defendant, being created by the same instrument, declarations of the grantor, made after the execution of the deed "that she had made a deed of gift absolute to her husband without any strings on it," were purely hearsay and inadmissible.

---

(1) 39 *Cyc.*, p. 160, n. 62.    (2) 39 *Cyc.*, p. 160, n. 62.    (3) 39 *Cyc.*, p. 172, n. 32, p. 178, n. 50, p. 179, n. 51.    (4) 22 *C. J.*, p. 357, n. 98, p. 359, n. 15.    (5) 22 *C. J.*, p. 234, n. 25.

APPEAL from a judgment of the Superior Court of Glenn County. J. O. Moncur, Judge. Reversed.

The facts are stated in the opinion of the court.

R. M. Rankin and Preston & Duncan for Appellants.

George R. Freeman, Arthur C. Huston and Arthur C. Huston, Jr., for Respondent.

FINCH, P. J.—The defendant is a physician and surgeon and for many years has been engaged in practice in San Francisco. In the year 1906 he and Margaret A. Peterson married and they thereafter lived together as hus-

---

4.   See 10 Cal. Jur. 1092; 1 R. C. L. 525.
5.   See 10 Cal. Jur. 1104.

band and wife until the death of the latter on the thirtieth day of May, 1921. Both had been married before and, at the time of their intermarriage, Margaret Peterson was childless and the defendant had two daughters, who were then young girls and were living with and thereafter continued to live with their grandmother. No children were born of the second marriage. The defendant owned property in San Francisco, the extent and value thereof not appearing. At the time of and prior to her marriage to defendant, Mrs. Peterson owned 926 acres of land in Glenn County, which she had received from her father's estate. At the time of the trial it was of the value of $25 an acre. W. H. Taylor is joined as a party plaintiff for the sole reason that he is the husband of Alma Taylor and the latter, therefore, will be referred to as the plaintiff. The plaintiff is a daughter of a deceased sister of Mrs. Bunnell. In June, 1920, Mrs. Bunnell underwent a serious operation and was thereafter an invalid until her death. On the twenty-sixth day of April, 1921, she executed and delivered to defendant a deed conveying her Glenn County land to him. Immediately thereafter, on the same day, the defendant signed and acknowledged a deed purporting to convey the same land to the plaintiff. The defendant never delivered this deed to the plaintiff, or to any person for her, but on the day following the signing and acknowledgment thereof he placed both deeds in his and his wife's safe deposit box.

The complaint alleges that Mrs. Bunnell "desired to leave a life interest in said property to her husband, the defendant, in the event of her death, and that plaintiff, Alma Taylor, should have the remainder interest in the same after her husband's death; . . . that during the month of April, 1921, the said defendant stated to his wife, . . . while she was ill and confined to her home and unable to interview or obtain advice from any other person or persons, that the proper procedure or method for the said Margaret A. Bunnell, in carrying out her wishes, would be to execute and deliver a deed of gift to him . . . and that he . . . would thereupon deliver to the plaintiff, Alma Taylor, a deed conveying said remainder interest to her, the plaintiff; that the said Margaret A. Bunnell, . . . relying upon said statements of the defendant, . . . did, on

or about the twenty-sixth day of April, 1921, make, execute, acknowledge and deliver to the defendant a deed of gift, purporting to and which did convey the property herein described to the defendant, and at the same time and concurrently with the making, execution and delivery of said deed, . . . defendant did make, execute and acknowledge a deed of gift conveying the remainder interest in said property after his life estate, to the plaintiff herein, Alma Taylor, and directed said defendant to deliver said deed of gift to the said plaintiff, Alma Taylor, and the said defendant did accept from the said Margaret A. Bunnell the said deed of gift so made, executed and acknowledged by her for the said plaintiff herein, Alma Taylor, and did promise the said Margaret A. Bunnell that the defendant would fulfill, carry out and perform her, said Margaret A. Bunnell's wishes in that particular''; that after the death of Mrs. Bunnell the plaintiff ''demanded of the defendant that the said defendant deliver to her . . . the said deed conveying to her the remainder interest in said property,'' but that the defendant refused to do so and ''informed said plaintiff that he had destroyed said deed from defendant to plaintiff and that she, the plaintiff would have no interest in said property whatever. In this behalf plaintiff . . . states . . . that the said defendant, subsequent to the death of his wife, the said Margaret A. Bunnell, conceived the idea and intention of fraudulently evading his obligation to carry out on his part, her wishes, and to vest in plaintiff the remainder interest in said property after defendant's life estate.'' The complaint states a second cause of action in the usual form of an action to quiet title. The prayer is for a decree adjudging that the defendant holds but a life estate in the land and that the plaintiff is the owner of the remainder. The answer does not deny the execution and delivery of the alleged deed from Mrs. Bunnell to defendant or the signing and acknowledgment of the alleged deed from defendant to plaintiff, but denies the other aforesaid allegations of the complaint. The court found all controverted matters against the plaintiff and entered judgment in favor of defendant, adjudging ''that the plaintiffs have no right, title or interest of any kind or nature in or to the real property described in plaintiffs' complaint and that the de-

fendant is the owner thereof in fee simple." The plaintiffs have appealed from the judgment.

There is testimony to the effect that Mrs. Bunnell so disliked the defendant's daughters that "she did not want them to have anything to do with the property or even to put their feet on it." On the other hand, the defendant testified that the relation between Mrs. Bunnell and his daughters was "cordial," and that between her and the younger daughter was "affectionate." Witnesses for the plaintiff testified that Mrs. Bunnell often said that she intended her husband to have the land during his lifetime, but that she desired it to go to her blood relatives at his death. Witnesses for the defendant testified that Mrs. Bunnell often stated that she intended to leave the land to defendant alone.

A witness for the plaintiff testified that, two or three days before the deeds were executed, Mrs. Bunnell "said that she wanted to make a will whereby she could leave the doctor the ranch during his lifetime, and then it was to go to her family, and asked me to find out how that could be done. . . . The same day or the day after, . . . in Dr. Bunnell's office, . . . I said, 'Dr. Bunnell, . . . Marge wants to make a will and she does not know how to do it. . . . Would you tell me what to do?' He said, 'What does she want?' I said, 'She wants to leave you the ranch during your lifetime and at your death it is to go to her family.' He said, 'Here is a piece of paper. Tell her to write out, "I declare this to be my last will and testament, and I hereby leave my ranch and all my personal property to my husband, Edwin Bunnell," and sign it.' . . . I went into Mrs. Bunnell's room and told her. I said, 'Here is a piece of paper. You can write this and then the doctor will get what you want him to have, and everything will be all straight,' . . . and she said, why, she would not think of writing it. That is not what she wanted. . . . She said, . . . 'I want him to have it during his lifetime, and to go to my family after his death.' . . . When I went out I met the doctor and I said she would not do it because there are so many things she wants changed. . . . He did not say anything." The defendant denied that this witness told him that Mrs. Bunnell desired him to have the land during his lifetime and

77 Cal. App.—34

that it should go to her family after his death. The remainder of such testimony of the witness stands uncontradicted, the defendant expressly admitting his part in the facts narrated. He testified: "Early on the 26th day of April my wife said to me, . . . 'I want to make a deed to you, Bunny, of this property. Will you have that deed made?' I said, 'Yes.' In this conversation she said to me, 'I want my ashes, when I die, dear, spread upon the Hayes Valley hills in the springtime when the flowers are out.' She also told me that she wanted to be cremated when she died. . . . And when she told me these things, 1 replied to her, 'That then consecrates that land to me as long as I live, spreading your ashes there, and it should be held consecrated to your memory after my death. Now, who have we got that will hold that land?' And she says, 'I don't know.' I went over all our relatives, including Billy Raterath, who was her favorite niece, Alma Prentice (Taylor), Edna Prentice, Francis Prentice, and she rejected them all. She said, 'They won't keep that land.' 'Well,' I said, 'now you ain't going to die anyway, dear. Alma is just as good as any of them. I will make a deed to her, to take effect at my death.' She says, 'I don't want you to.' I went out of the room crying. . . . And then that same day I obtained those blanks from Crocker and Company with instructions from the partner of my brother-in-law, Albert H. Elliott, to take them to a public stenographer, . . . with the old deed that I had, and she would fill out those forms, which was done. . . . Q. What time of day was the deed from Mrs. Bunnell to you executed? . . . A. Signed and witnessed before Mr. Samuels in the evening, after six o'clock. Q. In the bedroom of your home? A. Yes. . . . Q. Now, at the time that she executed that deed did she make any statement to you, or to Mr. Samuels, about the deed? . . . A. Mr. Samuels asked her if she knew it was a gift deed, and she said certainly she did. . . . She was sitting up in bed. . . . Q. Was the other deed, from yourself to Alma Taylor, signed by you? A. It was. . . . In my office, the same night. . . . Q. Did Mr. Samuels take the deeds away from the house at all? . . . A. He went upstairs and put his seal on them and brought them back. . . . Q. Did he deliver them both to you? A. Yes, sir. Q. And what did you do? A. Put them

in my pocket. . . . The next day I took them to the safe deposit box and deposited them. Q. Whose safe deposit box was that? A. Mine—that is, a joint deposit box of mine. My wife had access to it. . . . Two or three days afterwards my wife, Margaret, . . . said to me, 'Have you told Alma Taylor about that deed which you made?' I said, 'No, I haven't.' She says, 'I haven't, and I am not going to.' She says 'Where is that deed?' I says, 'It is in the safe deposit box.' She says, 'Get it and destroy it. I don't want Alma Taylor to have a thing of mine.' . . . Q. Did you destroy the deed? A. I did. . . . With reference to the conversation, it was the same day. . . . Q. You never had delivered anybody that deed, had you? A. No, sir. . . . Q. After that . . . did you have any further or additional conversation with your wife about this deed . . . to you? A. No, sir. Q. Did you ever have any further or other conversation with her about the deed which you had made and which you destroyed? A. No, sir. . . . Q. Now when you said to your wife, 'I will make it to Alma,' why did you say, 'I will make it to Alma?' A. To get rid of the conversation and have the conversation over with, and to stop talking about death before my sick wife. . . . Q. When did you intend to tell Alma Taylor that you . . . had made a deed to her? . . . A. Never. I expected her to find it in my safe deposit box at my death." A witness for the plaintiff testified: "He (defendant) said that he wished she (Mrs. Bunnell) would leave him the ranch. He asked me why I did not talk to her about it . . . It was some little time before she died; a matter of weeks probably." Referring to the day after the deeds were executed, the witness testified: "I went into the doctor's office and he said, 'Last night Marge called me in and told me she wanted to arrange her . . . property.' I asked her what she wanted to do with it and I would tell her how to do it. . . . She said, 'I want you to have my ranch for your lifetime, but after your death I want it to go to Alma because I never want your daughters to inherit my property.' . . . And he said, 'I will tell you what we will do; you make out a deed to me and I will make out a deed to Alma, and in case of your death I will immediately turn over the deed to Alma'; also his wife said that she wanted him to pay her mother fifty dollars a month for life; and he said, 'I

explained to her that if she put the property in trust or something it might be difficult for me to pay the fifty dollars a month to her mother always because they would interfere; and she seemed satisfied with this, and we signed the deeds.'" The defendant denied having made the foregoing statements, but testified that, referring to the land, on the day after the execution of the deeds, he said: "She has deeded it to me, and I have deeded it to Alma, to take effect at my death." Witnesses for plaintiff testified that "some days" after the deeds were executed Mrs. Bunnell stated, in substance, that the deeds were executed pursuant to an understanding between her and the defendant that he was to take a life estate in the land and the plaintiff the remainder. A witness for defendant testified that Mrs. Bunnell, a few days before her death, said that "she had deeded the ranch to Bunny, the doctor; that she was leaving it to him without any strings on it." Another witness for defendant testified that, at a time subsequent to the execution of the deeds, Mrs. Bunnell said "that she had made a deed of gift absolute to her husband of the ranch, without any strings on it." Each party made appropriate objections to the evidence introduced by the other relative to such statements.

The trial judge filed a written opinion in which he said: "The defendant's testimony concerning the conversations which took place between him and Mrs. Bunnell just prior to, at the time of, and shortly subsequent to the time of the making of the deeds referred to, is to me not very convincing, but if it be entirely disregarded there is no evidence as to what took place between them or was said by either of them to the other at said times and the statements and admissions testified to by the various witnesses ... are in themselves insufficient in my opinion to create an inference that any promise was made by Dr. Bunnell to Mrs. Bunnell, or that any understanding was had between them and which, by reason of any failure of the defendant to perform, or by the imposition of any fraud, either actual or constructive by him, a constructive trust was thereby created." [1] In determining whether the evidence is sufficient to show that the defendant is an involuntary trustee, it must be viewed in the light most favorable to the plaintiff. [2] So viewing the evidence, it

appears that Mrs. Bunnell expressed a desire to leave the land to defendant for life and the remainder to her family; that such desire was communicated to defendant; that he thereupon prepared the draft of a will leaving him the property absolutely; that Mrs. Bunnell refused to execute the instrument so prepared; that a few days later Mrs. Bunnell told defendant that she desired to so dispose of her land that he would have a life estate therein and the plaintiff the remainder; that the defendant then promised his wife that if she would make a deed of the property to him he would convey the same to plaintiff, to take effect at his death; and that Mrs. Bunnell thereupon conveyed the property to defendant and that at the same time and as a part of the same transaction he signed and acknowledged a deed thereof to plaintiff, but never delivered it to her. In view of the confidential relation of husband and wife and the further fact that the defendant was the active adviser of his wife in the transaction and that, pursuant to his suggestion and advice, he was placed in a position which afforded him every opportunity to perpetuate a fraud upon the plaintiff, it seems clear that the evidence is sufficient to show that defendant is the owner of only a life estate in the land and that he holds the legal title to the remainder in trust for the benefit of the plaintiff. The court certainly was not bound to accept defendant's explanation that he did not promise to convey the land to plaintiff and that his wife instructed him to destroy his deed to the plaintiff. **[3]** "If one spouse, without consideration other than a parol promise to convey or to hold land for the purpose of carrying out a trust in favor of the grantor, obtains an absolute deed from the other, the breach of promise is constructive fraud, and makes the grantee an involuntary trustee for the grantor, although at the time there was no intention not to perform." (13 Cal. Jur. 869, and cases there cited; *Cooney* v. *Glynn,* 157 Cal. 583, 587 [108 Pac. 586]. See, also, *Logan* v. *Ryan,* 68 Cal. App. 448 [229 Pac. 993].) "The authorities fully bear out the assertion that in such cases a constructive trust arises, and that the statute of frauds has no application." (*Brison* v. *Brison,* 75 Cal. 525, 530 [7 Am. St. Rep. 189, 17 Pac. 689].)

Respondent contends that, "as to the alleged admissions of defendant, it is well settled that the admissions of a

trustee cannot be used for the purpose of proving a trust." In answer to a similar contention the supreme court said: "The declarations of the defendant which were made to the children of the deceased, Mrs. Cooney, a few days after the execution of the conveyance, were not declarations constituting a promise made at that time to hold the property in trust, but they were statements by him admitting that at the time the deed was executed he had made these promises. They constituted evidence therefore of what had occurred at the very time of the transactions and were not subsequent promises made by him." (*Cooney* v. *Glynn,* 157 Cal. 589 [108 Pac. 589].)

[4] It was error to admit evidence of the declarations of Mrs. Bunnell, made after the execution of her deed and not in the presence of defendant, in disparagement of the title thereby conveyed to him. (*Bollinger* v. *Bollinger,* 154 Cal. 695, 705 [99 Pac. 196]; *Kershaw* v. *Madsen,* 62 Cal. App. 11, 15 [216 Pac. 55]; *McGehee* v. *Curran,* 49 Cal. App. 186, 199 [193 Pac. 277]; *Steinberger* v. *Young,* 175 Cal. 81, 90 [165 Pac. 432].) By delivery of his deed to the grantee, a grantor parts with his title, and he will not be permitted thereafter to disparage the title so conveyed. (*Fisher* v. *Oliver,* 174 Cal. 781, 788 [164 Pac. 800].) There is no contention that the deed was not delivered to defendant or that it did not convey the legal title to him. The complaint alleges that the deed was delivered and that it "did convey the property herein described to the defendant." The case, therefore, is unlike that of *Williams* v. *Kidd,* 170 Cal. 631, 649 [Ann. Cas. 1916E, 703, 151 Pac. 1], where the question in issue was whether or not the deed there involved had been delivered. In that case it is said: "Of course it is true that after such delivery no acts or declarations of the grantor in derogation of his grant will be received."

[5] It was also error to admit evidence of declarations of Mrs. Bunnell, made after the execution of the deed to defendant, "that she had made a deed of gift absolute to her husband, without any strings on it," and other similar evidence. Prior to the time those declarations were made Mrs. Bunnell had conveyed the land to defendant, either absolutely or impressed with a trust in favor of plaintiff. In either case she parted with all her pecuniary

interest in the property upon the delivery of her deed to defendant. Sections 1853 and 1870, subdivision 4, of the Code of Civil Procedure, relating to evidence of declarations of a deceased person against his pecuniary interest, therefore, have no application. Plaintiff is not claiming as successor to any interest remaining in Mrs. Bunnell after the execution of the deed to defendant, but she claims an interest conveyed by that deed. Her interest in the land, if any, and that of the defendant were created by the same instrument, and there is no more reason for admitting proof of Mrs. Bunnell's declarations in favor of the one party than the other. Such declarations were purely hearsay and therefore inadmissible. (*Hannah* v. *Canty,* 175 Cal. 763, 770 [167 Pac. 373]; *Thaxter* v. *Inglis,* 121 Cal. 593, 594 [54 Pac. 86]; *Estate of Baird,* 193 Cal. 225, 241 [223 Pac. 974].) In view of all the circumstances, it is clear that the error of admitting such testimony was prejudicial.

The judgment is reversed.

Hart, J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 21, 1926.