[Civ. No. 12107.   First Dist., Div. Two.   Dec. 10, 1942.]

SARAH GORHAM AIROLA, as Administratrix, etc., Respondent, v. FRANK E. GORHAM et al., Appellants.

Jos. H. Huberty and Harder & Missall for Appellants.

Bush & Ackley for Respondent.

DOOLING, J. pro tem.—Separate appeals were taken by the two defendants from a judgment of the trial court decreeing that they held certain real property in trust for the plaintiff as administratrix of the estate of Lucinda Gorham, deceased. Appellant Frank E, Gorham is a son of the decedent, and appellant Dorothy L. Gorham is the widow of George G. Gorham, another son of the decedent. For convenience these two sons of decedent will be referred to in this opinion as Frank and George and the decedent as Lucinda.

Prior to March 27, 1928, the estates of the deceased father of Frank and George and of a deceased brother William were both in course of probate. Their mother Lucinda was entitled to succeed to all of the property of both estates. The trial court found that on or about March 27, 1928 Frank and George requested Lucinda to deed the property in both estates to them because this property, a large part of which was owned by her with them as tenants in common, was heavily incumbered and in danger of being lost and upon their promise that they would hold such property in trust for her and reconvey it to her as soon as pending business transactions

involving said property, and upon which depended the saving of said property, were completed; and that relying upon this promise Lucinda on March 27, 1928, executed and delivered a deed to such property to Frank and George. The trust found by the trial court to exist as a result of these facts is the type recently characterized by this court in *O'Brien* v. *O'Brien*, 50 Cal.App.2d 658 [123 P.2d 877], as a "voluntary constructive trust" or a "positive voluntary trust resting in parol."

The appeal of Dorothy L. Gorham is taken on the judgment roll alone and two points only are made for a reversal by her. 1. That the cause of action as to her is barred by the four-year statute of limitations; and 2. that the distribution of the property to George, whose successor she is, by the probate court in the two estates of his father and brother William is res judicata against Lucinda and her estate.

The second ground is foreclosed by *Parr* v. *Reyman*, 215 Cal. 616 [12 P.2d 440], wherein the precise question was presented to the court and it was expressly ruled that a prior agreement with regard to the property of an estate is not merged in a decree of distribution so as to foreclose the enforcement of the agreement. (*Cf. Lamb* v. *Lamb*, 171 Cal. 577, 581 [153 P. 913].)

The first ground depends on the following facts: On March 4, 1936 George unconditionally delivered to a third person a deed conveying the property to his wife, to be delivered to her upon his death. George died August 1, 1936 and the deed was recorded August 10, 1936. This action was commenced on April 24, 1940. It thus appears that if the statute began to run on March 4, 1936, the date of the unconditional delivery of the deed, the action was not brought within the four-year period. The question is presented whether a voluntary trustee can start the statute of limitations running against the beneficiary of the trust by secretly delivering a deed to the property to a third person to hold until his death.

It is unquestionably the law that upon the transfer of trust property to a stranger to the trust the transferee becomes an involuntary trustee and the statute of limitations ordinarily commences to run from the date of the transfer. (*Lezinsky* v. *Mason Malt W. D. Co.*, 185 Cal. 240 [196 P. 884].) However, there is a recognized exception to the general rule which is thus expressed in 25 Cal.Jur. 275:

"In some circumstances, the currency of the statute commences, not at the time of the wrongful act by which the trust was created, but only at a subsequent date when the plaintiff became cognizant of the facts."

For applications of the rule to involuntary trusts see *Wills* v. *Pauly,* 116 Cal. 575, 582 [48 P. 709]; *Truesdail* v. *Lewis,* 45 Cal.App.2d 718 [115 P.2d 218]; *Hillyer* v. *Hynes,* 33 Cal. App. 506, 510 [165 P. 718].

This is also the rule in the case of fraudulent conveyances generally. (*Adams* v. *Bell,* 5 Cal.2d 697, 703 [56 P.2d 208]; *Brown* v. *Campbell,* 100 Cal. 635 [35 P. 433, 38 Am. St.Rep. 314]; *Marshall* v. *Buchanan,* 35 Cal. 264 [95 Am.Dec. 95].) The transfer of trust property to a stranger being a conveyance in fraud of the beneficiary's rights should on principle follow the same rule. Indeed the rule is one of broader application and has been extended to cover other types of cases. (*Huysman* v. *Kirsch,* 6 Cal.2d 302, 311-313 [57 P.2d 908]; *Marsh* v. *Industrial Acc. Com.,* 217 Cal. 338 [18 P.2d 933]; *Lightner Mining Co.* v. *Lane,* 161 Cal. 689 [120 P. 771, Ann.Cas. 1913C, 1093].)

In *Huysman* v. *Kirsch, supra,* a malpractice case, the Supreme Court said at page 312:

"The principle running through all these authorities, and approved by our decision, was that the statute of limitations should not run against an injured employee's right to compensation during the time said person was in ignorance of the cause of his disability and could not with reasonable care and diligence ascertain such cause."

It seems to be the position of this appellant that since she had no knowledge of the trust she took the property from her husband innocently and without fraud on her part and that as to her the statute should therefore commence to run from the date of the deed's delivery. By making the conveyance of the trust property to his wife George was guilty of an active fraud. To start the statute of limitations running in favor of his wife before discovery of the fraud would work at least a constructive fraud on Lucinda. The wife, though an innocent donee, being the beneficiary of her husband's fraud, takes the property charged with the fraud so as to impress a trust upon it in her hands. (Civ. Code, § 2243; *Allen* v. *Myers,* 5 Cal.2d 311 [54 P.2d 450].) To hold that where the gift was made secretly to an innocent

donee the statute would at once commence to run might well result in barring the cause of action before its discovery by the defrauded party. We are satisfied that this is not the law and that the statute under the facts of this case did not commence to run until the death of George (*Barritt* v. *Barritt*, 132 Cal.App. 538, 543 [23 P.2d 54]) which occurred within four years of the commencement of the action.

Frank's appeal is brought to this court on a reporter's transcript and in addition to the claim of res judicata, already disposed of in the consideration of the other appeal, he states and argues as grounds for reversal the matters hereinafter discussed:

1. That the evidence does not support the finding of a trust as to Frank.

The evidence relied upon in this regard is undoubtedly stronger against George than against Frank. It consists almost entirely of evidence of conversations had with Lucinda, George and Frank by the various witnesses. Of the statements of these three persons so given in evidence we will quote only those which we have determined were properly admissible to prove the existence of the trust.

The witness Mrs. Airola testified to a statement made by George before the deed was signed:

"George told me they had a deed made out to get Mother to sign, for George and Frank, for to get the property straightened out. She would have to deed to them and get it in their name to get that property straightened out, and then they would turn it back to her after the business was settled. Then they would turn it back to her, and he wanted to know if she would sign it, and I told him he would have to talk to her."

The witness Miss Questo testified to the following conversation with Lucinda, her grandmother, at a time when the deed had been prepared, but before its execution:

"My grandmother asked me if I would look at the deed and tell her if she should sign it, and I told her I could not tell her whether she should sign the deed or not, but that she was signing away all her property when she signed it, and she told me that my uncles were to make an agreement protecting her interest in the property, and the next time my uncle went to Stockton, he was to have the agreement made out."

The testimony of the same witness as to what occurred when Lucinda signed and delivered the deed to Frank, George not being present:

"My grandmother told him (Frank) that she had asked me whether she should sign the deed or not, and she told him about what I had told her about signing the deed, and then he—My uncle Frank—He said he didn't know much about it, but uncle George said the deed would have to be signed, and it would not take long until everything was cleared up. . . . That was before the deed was signed."

Various statements testified to have been made by Frank to other members of Lucinda's family after the property had been deeded to George and Frank, of which the following are typical:

"Uncle Frank was going to see the Tri-State, and he mentioned that they might have to sell the cattle or the lower ranch, and my Mother said, 'Is it going to take everything to settle up the bills?' Uncle Frank said, 'No, I think there will be a little something left for all of us.'"

"Well, in the Post Office, he was talking about the property—sickness—onething another, and he said, 'When everything is settled up, we will all get something but there won't be any of us rich.'"

"He said, 'When everything is settled up everybody will get what is coming to them.'"

"Don't get riled up. You girls will all have a share in the property."

It will be observed of this testimony that as to George there is direct evidence in his statement as testified to by Mrs. Airola and the conversation with Lucinda testified to by Miss Questo to support a finding that George promised Lucinda to hold the property in trust for her and that she deeded the property in reliance upon that promise. As to Frank while there is no direct evidence that he made a similar promise to Lucinda we are satisfied that from the evidence the court could reasonably draw the inference either that he knew of and impliedly agreed to the promise made by George to Lucinda in accepting the deed, or that he made George his agent to arrange with Lucinda for the transfer and afterwards recognized and ratified George's promise that they would hold the property in trust. These inferences find support in Frank's statement just before the execution of the

deed: "He said he didn't know much about it, but uncle George said the deed would have to be signed, and it would not take long until everything was cleared up." This not only amounted to a statement recognizing George as the negotiator with Lucinda, but the words, "it will not be long until everything is straightened up" are meaningless if Frank understood that the deed from Lucinda was to be absolute and become meaningful only if Frank knew of and acquiesced in the promise previously made by George to hold the property in trust. Frank's subsequent statements acknowledging that the rest of the family would ultimately have a share of the property, while too indefinite in themselves to establish that he took the property subject to a trust, when coupled with the express testimony of the trust, tend to prove both his knowledge of and acquiescence in the trust arrangement. (*Taylor* v. *Morris,* 163 Cal. 717 [127 P. 66]; *Cooney* v. *Glynn,* 157 Cal. 583, 589-90 [108 P. 506]; *Taylor* v. *Bunnell,* 77 Cal.App. 525, 533-34 [247 P. 240].) Not only the weight of the testimony but the inferences to be drawn therefrom are for the trial court and circumstantial as well as direct evidence will support a finding. (*Silva* v. *Gustine Creamery Co.,* 217 Cal. 146, 149 [17 P.2d 699]; *Raggio* v. *Mallory,* 10 Cal.2d 723 [76 P.2d 660]; *Hall* v. *Susskind,* 120 Cal. 559, 563 [53 P. 46]; *Katenkamp* v. *Union Realty Co.,* 36 Cal.App. 2d 602, 617 [98 P.2d 239].)

This case falls well within the provisions of Civil Code, section 1589:

"A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."

The rule is thus expressed in 65 C.J. 472:

"The promise need not be express in order to raise a trust, silent acquiescence on the part of the grantee being sufficient where he has knowledge of the grantor's intention and understanding of the transaction."

The acceptance of the deed by Frank with knowledge of George's promise to Lucinda, and the evidence will support the inference that this is what occurred, was enough to bind him to the obligations previously assumed by George. (*Si-*

*mons* v. *Bedell,* 122 Cal. 341, 346-7 [55 P. 3, 68 Am.St. Rep. 35].)

2. That the testimony of Miss Questo as to Lucinda's conversation at the time that Lucinda showed her the deed and asked her advice about executing it was hearsay and improperly admitted over this appellant's objection.

At the time of this conversation the deed was already prepared and in Lucinda's hands for execution. She exhibited the deed to her granddaughter and asked her advice about its execution. The conversation was a verbal act directly connected with the pending transaction. It falls within an exception recognized both by our statutory law and the decisions following the statute. (Code Civ. Proc., § 1850; *Sethman* v. *Bulkley,* 9 Cal.2d 21 [68 P.2d 961]; *Rodriguez* v. *Rodriguez,* 69 Cal.App. 399 [231 P. 375]; *Simons* v. *Bedell, supra,* pp. 349-50.)

The case of *Sethman* v. *Bulkley, supra,* is so apposite as to justify an extensive quotation from pages 24-25:

"The principal contention of the defendants on this appeal is that the evidence is insufficient to support the findings of the trial court that the mother had prior to her death made said transfers of real and personal property to the defendants upon their promise to pay to the plaintiff the sums of money mentioned in said letter. This contention rests for support mainly upon the alleged error of the trial court in admitting in evidence the letter of February 18, 1926. If said letter was properly admitted in evidence— which the defendants do not concede—it is contended by the plaintiff that it furnishes ample evidence to support the findings of the court in the respect just mentioned.

"As we have seen, the letter and three transfers of property by the mother to her two daughters bore the same date. It is presumed that a writing is truly dated. (Subd. 23, § 1963, Code Civ. Proc.) There is no evidence in this case to overthrow this presumption. The uncontradicted evidence, therefore, in this case is that the mother wrote this letter, in which she stated that she had arranged with her daughters to make the payments called for in the letter, at the date on which she conveyed to her two daughters the two pieces of real property and assigned to them a mortgage given to secure a promissory note in a substantial amount. From these proven facts, the trial court drew the inference that said letter was written and said transfers of

property were made as one transaction, and that the letter was admissible to show the true intent and purposes of the parties involved therein. As a part of the same transaction the letter was admissible under the *res gestae* rule which, as stated in section 1850 of the Code of Civil Procedure, is as follows: 'Where, also, the declaration, act, or omission forms part of a transaction, which is itself the fact in dispute, or evidence of that fact, such declaration, act, or omission, is evidence, as part of the transaction.' The fact in dispute in this action is whether the mother arranged with her daughters that upon her death they would pay to their brother certain sums of money. The letter expressly states that such an arrangement had been made by her with her daughters. It was, therefore, evidence of the fact in dispute, and was admissible for the purpose of proving that fact. It is true that the letter was not delivered, and was left by the mother in her safe deposit box, where it was found in a sealed envelope with her will immediately after her death. The fact that the letter was not delivered before the death of the writer did not destroy its admissibility as part of the *res gestae* or render it insufficient as proof of the statements therein contained. (*Rogers* v. *Manhattan Life Ins. Co.*, 138 Cal. 285 .[71 P. 348].) With this evidence properly admitted in evidence, the least that can be said in favor of the defendants' contention that there is a lack of evidentiary support of the findings, is that the evidence as a whole upon the issue involved is in conflict, and that the trial court's conclusion is final upon appeal.''

This appellant seeks to distinguish the holding in the Bulkley case from the facts of this case on the ground that in the Bulkley case the letter was written on the same day as the execution of the deeds, whereas the conversation here in question took place a day or two before Lucinda executed the deed. The suggested distinction in our judgment is not sound. The conversation clearly ''formed a part of the transaction'' within the meaning of Code of Civil Procedure, section 1850. It not only related to the execution of the deed, but the deed was already in Lucinda's hands for execution. She was then in the very process of deciding whether she should execute it or not. It would be sacrificing substance to form to hold that if the conversation were held on the same day as the execution of the deed it would fall within the rule of the Bulkley case, but because it took

place a day or two in advance of the execution it falls without that rule. The proper inquiry is not whether the conversation was contemporaneous with the physical execution of the deed, but whether it was a part of the transaction culminating in its execution. From the time the deed·was delivered to Lucinda with the request that she execute it and while she was weighing in her mind the wisdom of its execution, the transaction culminating in the execution was in progress. Such is the logical conclusion from *Rodriguez* v. *Rodriguez, supra,* where the conversation in question took place the day before the execution of the deed, this court saying at page 402:

"It will be noted that those declarations were made on the day before the deed was made, but it will also be noted that the declarations were made by the deceased at the very time that he was engaged in arranging the transfer which is in litigation. The court did not err in receiving such declarations in evidence."

Parenthetically, it may be remarked, that George's statement to Mrs. Airola, made after the preparation, but before the execution of the deed, equally falls within this rule of evidence.

It is useless for appellant to argue to an intermediate court that *Sethman* v. *Bulkley* is out of harmony with earlier decisions. It is the latest expression of our Supreme Court on the subject, and we are bound to follow the rule of evidence therein announced. However, even accepting the limitation on this rule of evidence, contended for by appellant, the evidence of this conversation was properly admitted. That limitation is well expressed in *Bridge* v. *Ruggles,* 202 Cal. 326, 330-331 [260 P. 553]:

"It is a well-settled exception to the hearsay rule that when the belief, feeling and mental state of a person at a particular time is material to the issue, evidence of such person's declarations indicative of his then mental state are admissible, and it is immaterial whether or not such declarations were made in the presence of the adverse party or what the character of the litigation may be so long as evidence of such state of mind is material to the issue. [Citing cases.] Such evidence is admissible, not to prove the truth of the statements made, for which it is incompetent, but for the purpose of supporting the issue to which proof of state of mind is material."

Even if evidence of the statement made to her granddaughter by Lucinda "that my uncles were to make an agreement protecting her interest in the property" was not admissible as evidence of the fact, it would be none-the-less admissible to prove Lucinda's state of mind, her understanding of and reliance upon the agreement of George and Frank, otherwise proved by evidence of their conduct and declarations.

3. That evidence of declarations made by Lucinda in derogation of her deed and after its execution were improperly admitted.

Among other defenses urged were laches and the statute of limitations. Material to these defences was the question of whether any repudiation of their trust by George and Frank had been brought home to Lucinda. To prove her state of mind, that she did not believe that George and Frank had repudiated or intended to repudiate the trust assumed by them, declarations of the existence of the trust were competent and material under the rule of *Bridge* v. *Ruggles,* quoted *supra.* The record is clear that this evidence was in fact admitted only for the limited purpose of proving Lucinda's state of mind.

4. That Lucinda had the independent advice of Miss Questo as evidenced by the testimony of the conversation between them prior to the execution of the deed.

The trial court found: "That at all times prior to, and at the time of the execution and delivery of the aforesaid deed from Lucinda Gorham to her said sons, Frank E. Gorham and George G. Gorham, the most confidential relations existed between Lucinda Gorham and her aforesaid sons, and said Lucinda Gorham reposed the greatest confidence and trust in her said sons, advising with them on business affairs, depending upon them for the protection of her interests, and trusting and believing that her said sons would deal fairly and justly with her in all things and would take no advantage of her."

The truth of this finding is not disputed and it finds ample support in the record. Lucinda at that time was eighty-six years old, an age when confidence is more likely to be reposed in members of the family.

This point is fully answered by the following quotation from *Grider* v. *Manisera,* 11 Cal.App.2d 355, 357 [53 P.2d 982]:

"Nor is respondent's claim to be defeated by the fact that she procured independent advice from her attorney before making the transfers. Her legal adviser warned against the prospective alienation of her properties, but in spite of this and, as she claimed, at the insistence of her daughter and granddaughter, she executed and delivered the conveyances. It has been held that the mere fact that independent advice was sought and given cannot of itself validate a deed given where fraud and undue influence motivated the transfer, but is merely a circumstance to be considered by the court in connection with other facts."

█ 5. That the action is barred by laches and the statute of limitations.

This being a voluntary constructive trust neither the statute of limitations nor laches would begin to operate until its repudiation was brought home to the beneficiary. (*O'Brien* v. *O'Brien*, 50 Cal.App.2d 658, 660 [123 P.2d 877]; *Chard* v. *O'Connell*, 48 Cal.App.2d 475, 480 [120 P.2d 125]; *England* v. *Winslow*, 196 Cal. 260, 272 [237 P. 542]; *Cooney* v. *Glynn*, 157 Cal. 583, 589 [108 P. 506]; *Taylor* v. *Morris*, 163 Cal. 717, 725 [127 P. 66].)

There is evidence of continuing declarations of both Frank and George in recognition of the trust. One witness testified that in 1935 she heard George tell Lucinda: "It won't be long now, Mother, until everthing will be straightened up and the property will be deeded back to you."

Something is attempted to be made of earlier declarations of Lucinda that the boys had not kept their promise to deed the property back to her. However the weight and effect of this evidence was for the trial court. The trial court may well have concluded that subsequent promises made to Lucinda satisfied her that her sons had not repudiated their trust and had every intention of carrying it out in good faith.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

Appellant Frank E. Gorham's petition for a hearing by the Supreme Court was denied February 4, 1943. Edmonds, J., voted for a hearing.